960 F.2d 200
 UNITED STATES of America, Plaintiff, Appellee,
v.
ONE PARCEL OF REAL PROPERTY WITH BUILDINGS, APPURTENANCES,
AND IMPROVEMENTS, KNOWN AS PLAT 20, LOT 17, GREAT
HARBOR NECK, NEW SHOREHAM, RHODE ISLAND,
Defendant.
Peter K. Beane, Claimant, Appellant.
UNITED STATES of America, Plaintiff, Appellee,
v.
ONE PARCEL OF REAL PROPERTY WITH BUILDINGS, APPURTENANCES,
AND IMPROVEMENTS, KNOWN AS PLAT 20, LOT 17, GREAT
HARBOR NECK, NEW SHOREHAM, RHODE ISLAND,
Defendant.
Joel Beane and Carol Beane, Claimants, Appellants.
 Nos. 91-1681, 91-1682.
 United States Court of Appeals,
First Circuit.
 Heard Jan. 6, 1992.
Decided March 12, 1992.
 
 Jean Rosiello, with whom John A. MacFadyen, Providence, R.I., was on brief, for claimant, appellant Peter K. Beane.
 Robert G. Flanders, Jr., with whom Neal J. McNamara and Flanders & Medeiros, Inc., Providence, R.I., were on brief, for claimants, appellants Joel Beane and Carol Beane.
 Michael P. Iannotti, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for U.S.
 Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and SELYA, Circuit Judge.
 SELYA, Circuit Judge.
 These consolidated appeals sprout from the discovery of a "marijuana farm" in New Shoreham, Rhode Island. Despite their shared roots, the appeals involve discrete claims and issues. The first appeal, prosecuted by Peter K. Beane, asks us to determine whether summary judgment foreclosing his claim to certain real property was duly entered in the underlying civil forfeiture action. The second appeal is prosecuted by Peter's siblings, Joel and Carol Beane, who were successful claimants in the same forfeiture proceeding. They ask us to reverse the district court's denial of their application for attorneys' fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (1988). We reject both appeals.
 
 I. BACKGROUND
 
 1
 We present the pertinent facts as reflected in the nisi prius roll, mindful of the case's posture. See Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (elucidating summary judgment standard).
 
 
 2
 The three Beanes owned the subject property, an oceanside estate consisting of approximately sixteen acres of land, a main house, a cottage, and a pump house, as tenants in common. The property, which the Beanes used as a vacation home, had an estimated value of $1,800,000. Eventually, however, Peter Beane's penchant for cultivating marijuana put an end to his family's summer idyll. On September 5, 1989, state and local police, armed with a search warrant, found some 385 marijuana plants growing in several plots scattered around the homestead. The police also discovered strong evidence of human care and cultivation. Peter Beane was arrested and charged.
 
 
 3
 Federal attention followed hard on the heels of this state-local foray. On October 23, 1989, federal officers asked a magistrate-judge to issue a seizure warrant. Finding probable cause to believe that the property was subject to forfeiture under 21 U.S.C. § 881(a)(7) (1982 & Supp.1988),[1] the magistrate complied. A civil complaint for forfeiture in rem soon followed.
 
 
 4
 The appellants all intervened. Peter Beane challenged the attempted forfeiture of his undivided one-third interest in the property on the basis that section 881(a)(7) did not apply on the facts sub judice (or, if it did, its application infracted his constitutional rights). In a separate claim, Peter's brother and sister invoked section 881(a)(7)'s "innocent owner" exception vis-a-vis their aggregate two-thirds interest in the property.
 
 
 5
 On May 13, 1991, the district court granted summary judgment in favor of the United States regarding Peter Beane's interest. Even before this judgment was obtained, the government entered into a stipulation with Joel and Carol Beane, dismissing its claims against their combined interest in the property. Not satisfied with this vindication of their innocence and the concomitant restoration of their equity, Joel and Carol Beane sought reimbursement of the fees and costs they had incurred in connection with the forfeiture action. The district court rejected their EAJA claim. United States v. One Parcel of Real Property, Etc. (Great Harbor Neck, New Shoreham, R.I.), 769 F.Supp. 445 (D.R.I.1991). These appeals ensued.
 
 II. THE FIRST APPEAL (PETER BEANE)
 
 6
 We divide our discussion of the first appeal into three subparts. We begin by capsulizing the jurisprudence of Fed.R.Civ.P. 56. We thereafter offer an overview of civil in rem forfeiture proceedings under 21 U.S.C. § 881(a)(7). At that point, we turn to Peter Beane's asseverational array.
 
 
 7
 A. Summary Judgment Principles.
 
 
 8
 Summary judgment's role is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Garside, 895 F.2d at 50 (quoting Fed.R.Civ.P. 56 advisory committee's note). Thus, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 9
 By invoking Rule 56, the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). It then falls to the opposing party to limn a genuine disagreement as to some material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990). In this context, "genuine" means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party, Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; "material" means that the fact is one "that might affect the outcome of the suit under the governing law." Id. On issues where the nonmovant bears the burden of proof, he must present definite, competent evidence to rebut the motion. See Anderson, 477 U.S. at 256-57, 106 S.Ct. at 2514-15; see also Garside, 895 F.2d at 49 ("a mere promise to produce admissible evidence at trial does not suffice to thwart the summary judgment ax").
 
 
 10
 In the precincts patrolled by Rule 56, appellate review is plenary. Garside, 895 F.2d at 48. We, like the district court, "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs- Ryan v. Smith, 904 F.2d 112, 115 (1st Cir.1990). Nonetheless, the court of appeals is not tied to the district court's reasoning but may affirm the entry of summary judgment on any independently sufficient ground made manifest by the record. See United States v. One Lot of United States Currency ($68,000), 927 F.2d 30, 31 (1st Cir.1991); Garside, 895 F.2d at 48-49.
 
 
 11
 B. Section 881(a)(7) Forfeitures.
 
 
 12
 The framework for civil forfeiture proceedings brought pursuant to 21 U.S.C. § 881(a) is borrowed from customs law. See United States v. Parcels of Real Property, Etc. (1933 Commonwealth Ave.), 913 F.2d 1, 3 (1st Cir.1990); see also 21 U.S.C. § 881(d) (1982 & Supp.1988) (mandating cross-reference); 19 U.S.C. § 1615 (1988) (codifying customs law forfeiture provisions). Under these rules, the government must initially demonstrate probable cause to believe "that the property had the required nexus to a specified illegal purpose." $68,000, 927 F.2d at 32; see also United States v. Parcel of Land, Etc. (28 Emery St.), 914 F.2d 1, 3 (1st Cir.1990); United States v. $250,000 in United States Currency, 808 F.2d 895, 897 (1st Cir.1987). In this setting, probable cause means "a 'reasonable ground for belief ... supported by less than prima facie proof but more than mere suspicion' that the property is subject to forfeiture." 28 Emery St., 914 F.2d at 3 (quoting $250,000, 808 F.2d at 897). Once probable cause is shown, the burden shifts to those individuals wishing to assert claims to the property. To prevail, such claimants must prove by a preponderance of the evidence either "that the property was not used in violation of the statute or that it was so used without the owners' knowledge or consent." 28 Emery St., 914 F.2d at 3.
 
 
 13
 C. Analysis.
 
 
 14
 Peter Beane contends that the district court erred in granting summary judgment for three reasons: (1) section 881(a)(7) does not allow the forfeiture of property used to grow marijuana for personal use; (2) a title dispute regarding ownership of the estate foreclosed summary judgment because a trial was necessary to resolve the dispute and adjudicate Peter Beane's actual ownership status; and (3) the forfeiture violated constitutional strictures prohibiting disproportionate punishment. We turn, then, to these contentions.
 
 
 15
 1. Personal Use. Peter Beane's first asseveration is that section 881(a)(7) does not authorize a forfeiture of property based on the cultivation of marijuana exclusively for personal use; and that, since a dispute existed as to why he grew marijuana--he asserts that it was for his own, admittedly copious, consumption--summary judgment was premature. We think this claim is more smoke than substance.
 
 
 16
 The statutory scheme is precise to the point of pedantry. By its express terms, section 881(a)(7) sanctions forfeiture of real property used "to commit ... a violation of this subchapter punishable by more than one year's imprisonment." The subchapter in question makes it unlawful "to manufacture ... a controlled substance." 21 U.S.C. § 841(a)(1) (1982). As employed in the statute, the term "manufacture" includes "production," 21 U.S.C. § 802(15) (Supp.1988), and the term "production" includes the "planting, cultivation, growing, or harvesting of a controlled substance." Id. at § 802(22). The pertinent authority also designates marijuana as a controlled substance. See 21 U.S.C. § 812 (1982).
 
 
 17
 Given the clear and unambiguous nature of the legislative mandate, the appellant's speculation about lessened congressional concerns in respect to marijuana and/or in respect to the personal use of drugs (as opposed to trafficking in them) seems feckless. We hold unhesitatingly, joining other courts that have formed the same conclusion, that marijuana grown for personal use is within the reach of section 841(a). See, e.g., United States v. Miller, 870 F.2d 1067, 1071 (6th Cir.1989); United States v. Klein, 850 F.2d 404, 405 (8th Cir.), cert. denied, 488 U.S. 867, 109 S.Ct. 173, 102 L.Ed.2d 143 (1988); United States v. Roberts, 747 F.2d 537, 547 (9th Cir.1984). Moreover, since violations of section 841(a) are felonies punishable by more than one year in prison, see 21 U.S.C. § 841(b) (Supp.1988), we also hold that growing marijuana, whether or not for personal use, is an activity sufficient to subject the property on which cultivation occurs to civil forfeiture under section 881(a)(7). Accord United States v. Premises & Real Property at 250 Kreag Road, 739 F.Supp. 120, 124 (W.D.N.Y.1990) ("proof of cultivation [of marijuana] for personal use will suffice" as a predicate illegal act under section 881(a)(7)). It follows inexorably that any disagreement over the purpose for which Peter Beane grew marijuana is not "material" in the Rule 56 sense.
 
 
 18
 2. The Title Dispute. Peter Beane endeavors to persuade us that brevis disposition was improper because an unrelated party, Everett Edwards, claimed title to a portion of the subject property. Edwards's claim barred forfeiture, this thesis runs, since the marijuana crop may have sprouted on land belonging to Edwards, thereby blunting section 881(a)(7)'s impact on the untainted remainder of the Beane homestead. We are not convinced.
 
 
 19
 This argument ignores--or at least misapprehends--the allocation of burdens of proof in forfeiture cases. In such cases, the government carries a relatively light burden of showing probable cause to believe that the subject property was used in a way that triggered the forfeiture laws. See, e.g., United States v. One 1986 Chevrolet Van, 927 F.2d 39, 42 (1st Cir.1991); 1933 Commonwealth Ave., 913 F.2d at 2-3; $250,000, 808 F.2d at 897; see also supra Part II(B) and cases cited therein. The forfeiture statute places no restriction on how the government must define the limits of the property to be seized--a lacuna that has troubled some tribunals. See, e.g., United States v. Premises & Real Property, Etc. (4492 S. Livonia Rd.), 889 F.2d 1258, 1270 (2d Cir.1989). Whatever safeguards courts may ultimately impose upon the government's powers of delineation, we believe that the government may treat as unitary, for purposes of an initial seizure warrant, any tract over which an owner or group of owners exercises dominion and treats as his/her/their own. Furthermore, we think it is beyond serious question that, for purposes of showing probable cause, the government is justified in describing a seized tract in the usual and customary manner reflected in the local land records. See, e.g., United States v. Santoro, 866 F.2d 1538, 1543 (4th Cir.1989) (land to be seized may be described by "the duly recorded instruments and documents filed in the county offices where the defendant property is located").
 
 
 20
 These principles are dispositive here. The government described the tract in the same way as the deed into the Beane family described it. The lower court determined, supportably, that the government satisfied its burden of elucidating probable cause.[2] In the face of this showing, Peter Beane failed to adduce any evidence sufficient either to negate the subject property's connection with proscribed activities or to bring himself within the statute's innocent owner exception.[3] In a forfeiture case where the government carries its initial burden and the claimant offers no exculpatory evidence, summary judgment is appropriate. See United States v. Parcel of Land, Etc. (18 Oakwood St.), 958 F.2d 1, 4-5 (1st Cir.1992); $68,000, 927 F.2d at 32.
 
 
 21
 3. Proportionality. In a last-ditch effort to salvage his property interest, Peter Beane argues that the Eighth Amendment blocks "disproportionate" forfeitures.[4] The judgment below, he tells us, suffers from this infirmity. We demur.
 
 
 22
 The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Having consistently recognized that section 881 forfeitures are civil in nature, see, e.g., United States v. Parcel of Land, Etc. (40 Moon Hill Road), 884 F.2d 41, 43 (1st Cir.1989); $250,000, 808 F.2d at 900, we begin our analysis by noting that such proportionality protections as the Eighth Amendment contains have generally been considered inapplicable to civil actions initiated by the United States. See Browning-Ferris Indus., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 262-63, 109 S.Ct. 2909, 2913-14, 106 L.Ed.2d 219 (1989); United States v. Certain Real Property, Etc. (6250 Ledge Road), 943 F.2d 721, 727 (7th Cir.1991).
 
 
 23
 Notwithstanding this phalanx of authority, the appellant insists that he discerns a trend toward applying proportionality protections in civil cases where the balance between the disapproved conduct and the sanctions received is severely lopsided. Drawing somewhat strained analogies to cases such as United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) and Pacific Mut. Life Ins. Co. v. Haslip, --- U.S. ----, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the appellant invites us to extend the Constitution's prohibition against excessive punishment to allegedly disproportionate sanctions imposed in the course of civil forfeiture proceedings.[5]
 
 
 24
 We need not venture too deeply into this thicket. Although the Second Circuit, virtually simultaneous with oral argument herein, decided that section 881(a)(7) forfeitures are subject to proportionality analysis, see United States v. Certain Real Property & Premises, Etc. (38 Whalers Cove Drive), 954 F.2d 29, 33-39 (2d Cir.1992), this court has ruled the other way, taking the unequivocal position that proportionality analysis is inappropriate in civil forfeiture cases brought under section 881(a)(7). See 40 Moon Hill Rd., 884 F.2d at 43-45. That ends the matter. "We have held, with a regularity bordering on the monotonous, that in a multi-panel circuit, newly constituted panels are, by and large, bound by prior panel decisions closely in point." Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Auth., 945 F.2d 10, 12 (1st Cir.1991) (collecting cases), cert. granted, --- U.S. ----, 112 S.Ct. 1290, 117 L.Ed.2d 514 (1992). The exceptions to this rule are few, see id., and they are narrowly construed. See id. at 12-13. No such exception is applicable here.[6] Inasmuch as 40 Moon Hill Rd. is the law of this circuit, Peter Beane's argument must fail.
 
 
 25
 Even assuming, arguendo, that we felt free to deviate from our prior precedent, it would not profit this appellant. On the merits, the Whalers Cove court determined that the forfeiture of a $68,000 interest in a condominium was not unconstitutionally disproportionate vis-a-vis the claimant's sale of $250 worth of cocaine on the premises. Whalers Cove, 954 F.2d at 39. Given that ruling, the tenor of recent criminal cases, see, e.g., Harmelin v. Michigan, --- U.S. ----, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (upholding, against a proportionality challenge, a life sentence without possibility of parole in respect to a defendant convicted of possessing 672 grams of cocaine); Hutto v. Davis, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (upholding a 40-year sentence for possession of nine ounces of marijuana with intent to distribute), and the facts of 40 Moon Hill Rd. (which involved the forfeiture of roughly 18 acres of land and a home based on the cultivation of approximately 130 marijuana plants), it is clear beyond peradventure that the forfeiture of Peter Beane's one-third interest in the homestead, though valuable, was not unconstitutionally harsh when balanced against the nature of his crime and the prodigious extent of his unlawful agricultural activities. In fine, the instant forfeiture cannot successfully be challenged on proportionality grounds.[7]
 
 
 26
 III. THE SECOND APPEAL (JOEL BEANE AND CAROL BEANE)
 
 
 27
 The remaining two appellants, after regaining their interests in the subject property, petitioned for an award of attorneys' fees under the EAJA.[8] Determining that the government was substantially justified in pressing the forfeiture action as to Joel's and Carol's property interests, Great Harbor Neck, 769 F.Supp. at 450, the district court denied the EAJA application. The unsuccessful applicants ask us to review that order.
 
 
 28
 A. The EAJA Standard.
 
 
 29
 Under the EAJA, it is the government's burden to show, by a preponderance of the evidence, that its position was substantially justified. McDonald v. Secretary of HHS, 884 F.2d 1468, 1475 (1st Cir.1989); United States v. Yoffe, 775 F.2d 447, 450 (1st Cir.1985). To meet this benchmark, both the government's underlying (agency) position and its litigation position must be substantially justified. McDonald, 884 F.2d at 1475-76. "In order to carry the devoir of persuasion, the government must show that it had a reasonable basis for the facts alleged, that it had a reasonable basis in law for the theories it advanced, and that the former supported the latter." Sierra Club v. Secretary of the Army, 820 F.2d 513, 517 (1st Cir.1987).
 
 
 30
 On appeal, we apply an abuse-of-discretion standard in gauging the appropriateness of the trial court's ruling anent substantial justification. See Pierce v. Underwood, 487 U.S. 552, 557-63, 108 S.Ct. 2541, 2545-49, 101 L.Ed.2d 490 (1988); Guglietti v. Secretary of HHS, 900 F.2d 397, 399 (1st Cir.1990). Under this standard, we will reverse only if, upon an assessment of the entire record, it appears that the court below made a clear error of judgment and reached the wrong conclusion. De Allende v. Baker, 891 F.2d 7, 11 n. 7 (1st Cir.1989); see also Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d 927, 929 (1st Cir.1988) (discussing abuse-of-discretion standard generally).
 
 
 31
 We start with bedrock. The fact that the government settles a case on unfavorable terms, or loses at trial, does not create a presumption that it operated without substantial justification. See Pierce, 487 U.S. at 568-69, 108 S.Ct. at 2551-52; De Allende, 891 F.2d at 12. Thus, in a forfeiture case, the fact that the government's attempt at confiscation misfired will not raise a presumption that its position lacked substantial justification. See United States v. Real Property, Etc. (2323 Charms Road), 946 F.2d 437, 440 (6th Cir.1991); United States v. B & M Used Cars, 860 F.2d 121, 124 (4th Cir.1988). Rather, the question of "[w]hether the government's decision to initiate and to pursue forfeiture proceedings against [the claimant's property] was reasonable must be examined in light of its burden under the appropriate statute." B & M Used Cars, 860 F.2d at 124; see also McDonald, 884 F.2d at 1476 (in measuring substantial justification, "one must compare the [government's conduct] with the Act it was supposed to implement").
 
 
 32
 Nor can the search for substantial justification be mounted in a legal vacuum. In a civil forfeiture proceeding, judicial inquiry into substantial justification must be tempered by the realization that the threshold for stating a prima facie case is low. To make out a prima facie case, the government need only show probable cause to believe that the property was used in a way that offended the forfeiture statute. See, e.g., $68,000, 927 F.2d at 32; 28 Emery St., 914 F.2d at 3; 1933 Commonwealth Ave., 913 F.2d at 3. Although we eschew a blanket rule that, in a forfeiture proceeding, a finding of probable cause is necessarily conclusive on the question of whether the seizure itself was substantially justified, but see United States v. One 1985 Chevrolet Corvette, 914 F.2d 804, 809 (6th Cir.1990) (since " 'substantially justified' and 'probable cause' are standards which require reasonableness ... when the government establishe[s] probable cause in the forfeiture proceeding, its position [is] substantially justified"); B & M Used Cars, 860 F.2d at 125 ("Surely the government must be justified in pursuing litigation when it has sufficient evidence [of probable cause] to prevail at trial."), in favor of a case-by-case approach that recognizes the distinctiveness of the "substantially justified" criterion, see Sierra Club, 820 F.2d at 517, we agree that, frequently, the inquiries will overlap and the answers coincide.
 
 
 33
 B. Analysis.
 
 
 34
 We bifurcate our analysis of the second appeal, differentiating between the government's "agency position," i.e., the underlying decision to initiate a forfeiture proceeding, and the government's "litigation position," i.e., the manner in which it implemented the decision to go forward with this particular forfeiture suit.
 
 
 35
 1. The Government's Agency Position. In this case, the government had overwhelming cause to conclude that the subject property was subject to forfeiture. See supra note 2. In the forfeiture context, probable cause is often the functional equivalent of substantial justification. See One 1985 Chevrolet Corvette, 914 F.2d at 809; B & M Used Cars, 860 F.2d at 125. That is true here. As the court below recognized, the government's initial decision to seize the Beane estate was altogether warranted.
 
 
 36
 The applicants' argument that the government needed to have reason to believe they were not innocent owners before it seized their aggregate two-thirds interest in the property puts the cart squarely in front of the horse and, in the bargain, misreads the allocation of burdens in civil forfeiture proceedings. As a general matter, a forfeiture action is properly conceptualized as a proceeding against the property, not against its owners. See United States v. United States Coin & Currency, 401 U.S. 715, 719-20, 91 S.Ct. 1041, 1043-44, 28 L.Ed.2d 434 (1971); United States v. On Leong Chinese Merchants Ass'n Bldg., 918 F.2d 1289, 1298 (7th Cir.1990) (Cudahy, J., concurring), cert. denied, --- U.S. ----, 112 S.Ct. 52, 116 L.Ed.2d 29 (1991); United States v. One 1975 Pontiac Lemans, Etc., 621 F.2d 444, 447 (1st Cir.1980). Under this rubric, "[t]o obtain the civil forfeiture ... the government need show no more than the existence of probable cause to believe that the property had the requisite nexus to a specified illegal purpose." $68,000, 927 F.2d at 32. Once the government satisfies this burden, the onus shifts to the claimants to prove either that the property was not so used or that they were innocent owners. See supra Part II(B). Given this framework, a rule that requires the government accurately to foresee, and anticipatorily to contradict, an owner's possible affirmative defenses would be unreasonable.
 
 
 37
 2. The Government's Litigation Position. The applicants counter that, even if the government had substantial justification to seize the estate, it was not substantially justified in choosing the manner in which the seizure was effectuated. This approach constitutes a challenge to the government's litigation position rather than to its agency position.
 
 
 38
 We rehearse the critical events. As previously mentioned, the government seized the property pursuant to a seizure warrant issued by a magistrate-judge. The warrant was executed on October 27, 1989 (four days after its issuance). There were no exigent circumstances attendant to the seizure. Within the week, the government filed a complaint for forfeiture in rem and a warrant of arrest and notice in rem. The marshal was commanded to "arrest, attach, and retain" the property and serve all persons claiming an interest therein. Notice was then given to potential claimants, including Joel and Carol Beane, apprising them of the seizure and the forfeiture action. The claimants allege that this procedure, which involved neither advance notice of the seizure nor a pre-seizure hearing, amounted to both an uncompensated taking and a violation of due process.[9]a.
 
 
 39
 The contention that the seizure amounted to a governmental taking without compensation in violation of the Fifth Amendment deserves short shrift. This contention entirely overlooks that the government acted within its statutory authority when it seized the defendant property. We think it is settled that if the federal government's actions comport, procedurally and substantively, with the terms of a lawfully enacted forfeiture statute, it may seize private property without compensating the owner. See Bolt v. United States, 944 F.2d 603, 610 (9th Cir.1991); Redford v. United States Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms, 691 F.2d 471, 473 (10th Cir.1982). Thus, the Takings Clause does not support a finding that substantial justification was lacking.
 
 
 40
 b.
 
 
 41
 The centerpiece of the applicants' due process argument is the theory that the procedure used by the government in seizing their property was constitutionally deficient. The applicants, however, persist in asking us to answer the wrong question: the gist of an inquiry into substantial justification is not whether the procedures utilized by the government might ultimately be found wanting; it is whether the government was reasonable in utilizing those procedures, that is, in adopting its litigation position. See Sierra Club, 820 F.2d at 516-18.
 
 
 42
 Here, the answer to the correct question is indisputably in the affirmative. In the forfeiture statute, Congress describes several ways in which the government can seize property putatively forfeitable under section 881. 21 U.S.C. § 881(b) (1982 & Supp.1988). One such way is for the government to "request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure." Id. In the case at hand, the government meticulously followed this directive. We agree with the Eleventh Circuit's statement in a similar case that "[w]hen the government follows the express dictates of a given statute, and there is no reason to believe that such a course is otherwise unauthorized, its position, for purposes of the EAJA, cannot lack substantial justification." United States v. Certain Real Estate, Etc. (4880 S.E. Dixie Highway), 838 F.2d 1558, 1562 (11th Cir.1988).
 
 
 43
 The applicants' rejoinder is that, in their situation, the government should have known that the procedure it utilized, although authorized by Congress, was constitutionally deficient. We find it difficult to conceive how, short of an express statutory overruling, the Executive Branch can be faulted for hewing to lines drawn in bold relief by the Legislative Branch. At any rate, the reasons given by Joel and Carol Beane to support their claim that the government "knew" or "should have known" of the statute's infirmities simply will not wash.
 
 
 44
 The mainstay of the applicants' importuning is the Second Circuit's opinion in 4492 S. Livonia Rd., 889 F.2d 1258. There, the panel held that, absent exigent circumstances, the seizure of an individual's primary home pursuant to section 881 violated the Due Process Clause unless notice and a hearing were afforded before the seizure occurred. Id. at 1262-65. But that opinion was not handed down until November 17, 1989--several weeks after the government seized the Beane property. Only the most blatant post hoc rationalization could support a conclusion that the government lacked substantial justification because, when initiating a statutorily authorized seizure, it failed to anticipate what a court might later rule in connection with the constitutionality of an act of Congress. The EAJA requires the government to be substantially justified--not prescient.
 
 
 45
 Even if the government had known of 4492 S. Livonia Rd., we do not believe it would have been bound to abandon the wishes of Congress and follow the holding of a court outside of the circuit in which the seizure took place.[10] It is apodictic that nonmutual offensive collateral estoppel does not apply against the federal sovereign. United States v. Mendoza, 464 U.S. 154, 159-63, 104 S.Ct. 568, 571-74, 78 L.Ed.2d 379 (1984). We think it is equally well-settled that the government need not acquiesce, on a nationwide basis, in one circuit's construction of federal law adverse to the government's interpretation of the law. See, e.g., Georgia Dep't of Medical Assistance v. Bowen, 846 F.2d 708, 710 (11th Cir.1988); Railway Labor Executives Ass'n v. I.C.C., 784 F.2d 959, 964 (9th Cir.1986). Such a "first in time" rule would not only be contrary to the structure of our federal judicial system, see Mendoza, 464 U.S. at 160, 104 S.Ct. at 572, but would also run counter to the spirit of the EAJA, for "the fact that one other court agreed or disagreed with the government does not establish whether its position was substantially justified." Pierce, 487 U.S. at 569, 108 S.Ct. at 2552.
 
 
 46
 In order for the Executive Branch, if it does no more than act on Congress's instructions, to incur liability under the EAJA, there must be a clear signal to government agents that those instructions are invalid. Put another way, the substantial justification requirement in the EAJA means that the government, when adhering to the dictates of Congress, can be found to lack substantial justification only if, at the time the government acted, the statute's invalidity was clearly established. After all, "[w]hile the EAJA is designed to encourage relatively impecunious private parties to challenge abusive or unreasonable governmental behavior by relieving such parties of the fear of incurring large litigation expenses, it does not allow the automatic shifting of fees." Sierra Club, 820 F.2d at 516-17 (citations and quotations omitted). Discerning no such patent invalidity here,[11] we refuse to disturb the district court's determination that the government was substantially justified in the manner by which it seized the subject property.
 
 IV. CONCLUSION
 
 47
 We need go no further.[12] We conclude that the district court properly entered summary judgment in favor of the United States against Peter Beane. As to Joel and Carol Beane, the government's agency and litigation positions, although ultimately unsuccessful, "ha[d] a reasonable basis in law and fact." Pierce, 487 U.S. at 566 n. 2, 108 S.Ct. at 2550 n. 2. Hence, the district court's determination that the government's actions were substantially justified fell well within the realm of its discretion. The court's denial of an EAJA award was, therefore, appropriate.
 
 
 48
 Affirmed.
 
 
 
 [1]
 The statute provides that certain property shall be subject to forfeiture in favor of the United States, including:
 All real property, including any right, title and interest in the whole of any lot or tract of land and any appurtenances or improvements, which is used ... in any manner or part, to commit ... [certain felonies involving illegal drugs], except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 21 U.S.C. § 881(a)(7) (1982 & Supp.1988).
 
 
 [2]
 As to the finding of probable cause, our review is plenary. One 1986 Chevrolet Van, 927 F.2d at 42. Here, the evidence of record is overwhelming and, in the main, uncontradicted. This evidentiary array includes police officers' affidavits based on personal observations, an informant's tip, and Peter Beane's admissions
 
 
 [3]
 Of course, Edwards could have stepped forward, protested the forfeiture, and pressed a claim to the property--a claim on which he would be entitled to prevail if he could prove his status as an innocent owner. But, for whatever reason, Edwards neither intervened nor otherwise attempted to advance such a claim. The present appellant lacks standing to prosecute a claim on Edwards's behalf
 
 
 [4]
 The appellant also claims that the forfeiture of his equity was so disproportionate as to transgress the Due Process Clause of the Fifth Amendment. But, his briefing makes no effort to distinguish between the standards applicable to proportionality analysis under the Eighth Amendment and the Due Process Clause. Hence, to the extent that a due process argument might conceivably differ from an Eighth Amendment argument, we consider it waived. See Ryan v. Royal Ins. Co., 916 F.2d 731, 734 (1st Cir.1990) ("issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned"); United States v. Zannino, 895 F.2d 1, 17 (1st Cir.) (same), cert. denied, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990)
 
 
 [5]
 We note, in fairness, that our research has uncovered Supreme Court precedents applying certain constitutional safeguards typically associated with criminal proceedings in civil forfeiture cases. See, e.g., United States v. United States Coin & Currency, 401 U.S. 715, 721-22, 91 S.Ct. 1041, 1044-45, 28 L.Ed.2d 434 (1971) (privilege against self-incrimination applies in some forfeiture cases); One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 696, 85 S.Ct. 1246, 1248, 14 L.Ed.2d 170 (1965) (exclusionary rule applies in forfeiture cases). In our view, these examples do not assist the appellant in any material fashion
 
 
 [6]
 With due respect to the Second Circuit, we are constrained to observe that most other circuits, like this one, have refused to subject section 881(a)(7) forfeitures to proportionality analysis. See, e.g., 6250 Ledge Road, 943 F.2d at 727; United States v. One 107.9 Acre Parcel, Etc., 898 F.2d 396, 400-01 (3d Cir.1990); Santoro, 866 F.2d at 1543-44
 
 
 [7]
 Peter Beane also suggests that, short of invoking the Constitution, this court might adopt a rule limiting forfeitures in their scope by applying an equitable doctrine of judicial restraint, thus allowing us to restrict the amount of property subject to forfeiture if seizing the entirety would be "harsh [and] unequal" under the totality of the circumstances. United States v. Tax Lot 1500, Etc., 861 F.2d 232, 235 (9th Cir.1988), cert. denied, 493 U.S. 954, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989). This court has held specifically, however, that "both [section 881(a)(7) ] and the case law authorize forfeiture proceedings against the entire tract of land, regardless of the magnitude of the infraction." 40 Moon Hill Rd., 884 F.2d at 45. Hence, we decline to interfere with Congress's unmistakable intent by imposing, in the name of equity, a judge-made barrier to the lawful effectuation of that intent
 
 
 [8]
 The EAJA provides in pertinent part:
 Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that other special circumstances make an award unjust.
 28 U.S.C. § 2412(d)(1)(A) (1988).
 
 
 [9]
 The case at bar is not a situation in which, after effectuating the seizure, the United States stalled the proceedings, thus encumbering the applicants' interests for an unnecessarily long period of time. Hence, the two section 881 forfeiture cases which have found a lack of substantial justification are readily distinguishable. In both situations, the government's foot-dragging was found to be unreasonable and/or in bad faith. United States v. $12,248 United States Currency, 957 F.2d 1513, 1517 (9th Cir.1991) (government not substantially justified when it "conduct[ed] a poor investigation ... and [when it] unreasonabl[y] delay[ed] in pursuing and processing [its] forfeiture claim"); United States v. 163.25 Acres of Land, Etc., 663 F.Supp. 1119, 1121 (W.D.Ky.1987) ("[T]he government's actions in pursuing this claim ... were unreasonable and bordering on bad faith."). In the present case, the district court did not find that the government dilly-dallied, pursued the forfeiture in an unreasonable manner, or acted in bad faith. Moreover, the record reveals no basis for any such suggestion
 
 
 [10]
 In an effort to persuade us that our own caselaw adumbrated the result reached by the Second Circuit, the applicants rely heavily on In re Kingsley, 802 F.2d 571 (1st Cir.1986). However, the portion of Kingsley which they cite is dictum. See id. at 578 (Coffin, J., concurring). Moreover, that case was written prior to the enactment of certain amendments to section 881(b). See Anti-Drug Abuse Act of 1986 (ADAA) Pub.L. No. 99-570, § 1865, 100 Stat. 3207 (Oct. 27, 1986). Those additions to section 881(b) contain the provisions which form the crux of the present dispute. In mulling those very amendments, we recently wrote that Kingsley did not "in any way compel obeisance to some imagined prefiling requirement" for seizures instituted pursuant to the amended version of section 881(b). In re Warrant to Seize One 1988 Chevrolet Monte Carlo, 861 F.2d 307, 311 (1st Cir.1988). Hence, Kingsley 's relevance to the issue of the government's substantial justification in this case is tenuous at best
 
 
 [11]
 While this case does not require us to address the underlying constitutional question, we note that at least one other circuit has rejected the argument that seizures carried out under the statutory procedure utilized in the instant case violate procedural due process guarantees. See United States v. Tax Lot 1500, Etc., 861 F.2d 232, 236 (9th Cir.1988), cert. denied, 493 U.S. 954, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989)
 
 
 [12]
 To the extent that the appellants have voiced other assignments of error, none merit discussion. We need not reach, and take no position upon, the government's claim that Joel and Carol Beane were not prevailing parties in the EAJA sense