January 5, 1993
 UNITED STATES COURT OF APPEALS
 For the First Circuit
 

No. 92-1648

 PEDRO L. RODRIGUEZ-PINTO,

 Plaintiff, Appellant,

 v.

 CIRILO TIRADO-DELGADO, ET AL.,

 Defendants, Appellees.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Gilberto Gierbolini, U.S. District Judge]
 
 

 Before

 Torruella and Stahl, Circuit Judges,
 
 and Skinner,* District Judge.
 

 

Hector Urgell Cuebas for appellant.
 

Vannessa Ramirez, Assistant Solicitor General, with whom Reina
 
Colon De Rodriguez, Deputy Solicitor General, Department of Justice,
 
was on brief for appellees.

 

 

 
*Of the District of Massachusetts, sitting by designation

 Stahl, Circuit Judge. In this appeal, plaintiff-
 

appellant Pedro Rodriguez-Pinto challenges the district

court's entry of summary judgment in favor of defendants-

appellees Cirilo Tirado Delgado and Rafael Rivera Gonzalez on

his claim of political affiliation-based discrimination. For

the reasons set forth below, we affirm the district court's

entry of summary judgment on all of plaintiff's claims except

his First Amendment claim for equitable relief. We remand

that claim for further proceedings.

 I.
 

 BACKGROUND
 

 As always, we review the district court's summary

judgment ruling de novo, reading the record in a light most
 

amiable to the nonmoving party. See Federal Deposit Ins.
 

Corp. v. World Univ., Inc., No. 92-1389, slip op. at 4 (1st
 

Cir. Oct. 22, 1992). Plaintiff is a career employee of the

State Insurance Fund of the Commonwealth of Puerto Rico ("the

Fund") who, at the time he filed his complaint, had accrued

more than twenty-three years of public service. He also is a

member of the New Progressive Party ("NPP"), whose

gubernatorial candidate lost the general election of November

6, 1984.

 At the time the complaint was filed, defendant

Cirilo Tirado Delgado was the Fund's Administrator and

defendant Rafael Rivera Gonzalez was the Fund's Director of

 -2-
 2

Personnel. Both defendants are members of the Popular

Democratic Party ("PDP"), whose gubernatorial candidate won

the 1984 election. Defendants were appointed to their

positions subsequent to January 2, 1985, the day the PDP

candidate assumed the governorship of the Commonwealth.

 Prior to the 1984 election, plaintiff was Chief of

the Fund's Finance Division. Plaintiff contends that as

Chief, he directed, supervised, and coordinated all Sections

of the Finance Division, including the Pay Vouchers Section,

the Collections Section, and the Claims and Attachments

Section. He further asserts that he coordinated "all the

deposits of funds pertaining to the State Insurance Fund in

the Government Bank and other commercial banks." 

 The complaint alleges that from July 1985 through

November 1985, defendants did not permit plaintiff to carry

out the duties of his position. It further states that,

since November 1985, plaintiff has been assigned "a small

amount of functions belonging to lesser positions in the

[Fund]. . . ." Plaintiff's sworn declaration, submitted in

opposition to defendants' summary judgment motion, clarifies

that, subsequent to the election, plaintiff was reassigned to

the position of Assistant to the Chief of the Fund's

Collection Division.1

 

1. Defendants contend that plaintiff's reassignment took
place pursuant to a reorganization of the Fund that was
carried out late in 1985. Plaintiff asserts that the

 -3-
 3

 Plaintiff claims that, since his reassignment, the

functions and duties of the Assistant to the Chief of

Collections have not been delegated to him, and that he has

been allotted only nominal tasks which take no more than ten

minutes a day to perform. Plaintiff further claims that the

Chief of the Fund's Collection Division, whom plaintiff now

is assisting, previously was under his supervision. He also

alleges that defendants have deprived him of the following

previously-obtained rights and benefits: (1) personal

secretary, (2) parking space, (3) office, (4) telephone, (5)

supervision of other employees, and (6) access to office

records and documents. Finally, plaintiff contends that he

was placed in a lower salary scale which has adversely

affected his ability to obtain certain pay raises, and that

he is subject to daily ridicule and harassment which, in

conjunction with the other circumstances of his job change,

cause him to feel as if he actually has been discharged from

his employment.2 It is plaintiff's position that

defendants' actions were precipitated by his affiliation with

the NPP.

 

reorganization was a sham whose true purpose was to demote
employees who were members of the NPP and to replace them
with PDP members. Plaintiff further asserts that he was, in
fact, replaced by active PDP members, and that all the
employees who were demoted pursuant to the 1985
reorganization were affiliated with the NPP.

2. The record reveals, however, that plaintiff has not left
his employment with the Fund.

 -4-
 4

 In June of 1986, plaintiff filed this action

pursuant to, inter alia, 42 U.S.C. 1983, alleging that
 

defendants had violated rights secured him under the First

and Fourteenth Amendments to the United States Constitution.

Plaintiff's complaint sought both damages and equitable

relief in the form of temporary and permanent injunctions

directing defendants to reinstate plaintiff to his former

employment and to refrain from acting toward him in an

unconstitutional manner. Subsequently, defendants filed a

motion for summary judgment, arguing that plaintiff's claims

under 1983 were insufficiently supported to forestall the

entry of judgment in their favor. The district court granted

defendants' motion, ruling (1) that plaintiff had not been

constructively discharged, (2) that plaintiff had not offered

sufficient proof on his claim that, since his transfer, his

work situation was so "unreasonably inferior to the norm,"

see Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218
 

(1st Cir. 1989) (en banc) (announcing this circuit's standard

for evaluating First Amendment political affiliation-based

employment discrimination claims where the employee has not

been discharged) (hereinafter "the Agosto-de-Feliciano
 

claim"), that it violated the First Amendment,3 and (3) that

 

3. The district court alternatively ruled that even if
plaintiff had adequately supported his First Amendment claim,
defendants would be entitled to qualified immunity therefrom
insofar as plaintiff was seeking civil damages from the
defendants in their individual capacities.

 -5-
 5

plaintiff had not been deprived of any property right

protected by the Fourteenth Amendment.4 On appeal,

plaintiff challenges all of the district court's rulings. We

discuss each in turn.

 II.
 

 DISCUSSION
 

A. The First Amendment
 

1. Plaintiff's Constructive Discharge Claim
 

 Plaintiff argues that the district court erred in

ruling that he was not constructively discharged. However,

we recently made clear that a First Amendment "claim of

constructive discharge due to a demotion or transfer cannot

succeed when a claimant, in fact, has not left employment."

Pedro-Cos v. Contreras, 976 F.2d 83, 85 (1st Cir. 1992) (per
 

curiam) (surveying pertinent First Circuit authority). Here,

the record reflects that plaintiff has not left his

employment with the Fund. Thus, his constructive discharge

claim fails as a matter of law.

2. Plaintiff's Agosto-de-Feliciano Claim5

2. Plaintiff's Agosto-de-Feliciano Claim5
 

 

4. At the same time, the court also dismissed several
pendent state claims brought by plaintiff.

5. In his concurrence, Judge Torruella questions the
continuing vitality of Agosto-de-Feliciano in light of the
 
Supreme Court's ruling in Rutan v. Republican Party of
 
Illinois, 110 S. Ct. 2729 (1990). Because we find, as will
 
be discussed more fully infra, that there exist sufficient
 
genuine and material factual disputes to warrant a trial on
plaintiff's claim for equitable relief even under the
arguably more stringent standard set forth in Agosto-de-
 

 -6-
 6

 a. Civil Damages
 

 Plaintiff also takes issue with the district

court's alternative ruling, see supra note 3, that defendants
 

are entitled to qualified immunity from his claim for civil

damages under Agosto-de-Feliciano.6 However, we repeatedly
 

have stated that, prior to our decision in Agosto-de-
 

Feliciano and the Supreme Court's decision in Rutan, it was
 

not clearly established that the constitutional prohibition

against politically motivated firings applied to other
 

personnel actions, such as promotions, transfers, demotions,

and hirings. See, e.g., Pedro-Cos, 976 F.2d at 85; Valiente
 

v. Rivera, 966 F.2d 21, 23 (1st Cir. 1992); Castro-Aponte v.
 

Ligia-Rubero, 953 F.2d 1429, 1430 (1st Cir. 1992). Here, all
 

the complained of adverse personnel actions took place prior

to our decision in Agosto-de-Feliciano and the Supreme
 

Court's decision in Rutan. As a result, the district court's
 

ruling that defendants were entitled to qualified immunity

from plaintiff's claim for civil damages was plainly correct.

 b. Equitable Relief
 

 

Feliciano, we do not reach this issue.
 

6. The doctrine of qualified immunity shields governmental
officials performing discretionary functions from liability
for civil damages when their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known. See Rivera v. Murphy,
 
No. 92-1688, slip op. at 7 (1st Cir. Nov. 10, 1992) (citing
Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).
 

 -7-
 7

 Plaintiff's claim for equitable relief under

Agosto-de-Feliciano to redress perceived ongoing
 

constitutional violations by defendants presents us with a

considerably more difficult issue. As noted above, the

district court held that plaintiff did not introduce

sufficient proof on this claim to warrant a trial. More

specifically, the court ruled that plaintiff had not

"produced enough evidence" of a sufficiently severe decline

in his work conditions for a factfinder to conclude, under a

"clear and convincing evidence" standard, that plaintiff's

work situation is "unreasonably inferior to the norm for the

position." See generally Agosto-de-Feliciano, 889 F.2d at
 

1218-20. The court also ruled that plaintiff had failed to

adduce evidence sufficient for a factfinder to determine,

under a "preponderance of the evidence" standard, that

defendants' true motivation in taking their actions was

political affiliation-based discrimination. See id. at 1220.
 

In so doing, the court found that the allegations set forth

in plaintiff's sworn complaint and elaborated upon in

plaintiff's sworn declaration were "conclusory" and, without

more, were insufficient to defeat defendants' motion for

summary judgment. We do not share the district court's view

of plaintiff's evidence.

 Summary judgment acts "to pierce the boilerplate of

the pleadings and assay the parties' proof in order to

 -8-
 8

determine whether trial is actually required." Wynne v.
 

Tufts Univ. Sch. of Medicine, No. 92-1437, slip op. at 6 (1st
 

Cir. Oct. 6, 1992). It is appropriate where "the pleadings,

depositions, answers to interrogatories, and admissions on

file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S.
 

317, 323 (1986). "In this context, `genuine' means that the

evidence is such that a reasonable jury could resolve the

point in favor of the nonmoving party." United States v. One
 

Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992)
 

(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
 

(1986)). A "material" fact is one "that might affect the

outcome of the suit under the governing law." Anderson, 477
 

U.S. at 248.

 The moving party bears the initial burden of

averring that the evidence is insufficient to support the

nonmoving party's case. See, e.g., Lawrence v. Northrop, No.
 

92-1702, slip op. at 3 (1st Cir. Nov. 25, 1992) (citations

omitted). Once that burden is met, the opposing party must

"limn a genuine disagreement as to some material fact." One
 

Parcel of Real Property, 960 F.2d at 204. In so doing, the
 

nonmovant cannot avoid summary judgment merely by promising

to produce admissible evidence at trial. Id. (citing Garside
 

 -9-
 9

v. Osco Drug, Inc., 895 F.2d 46, 49 (1st Cir. 1990)).
 

"Instead, the [nonmovant] must present affirmative evidence

in order to defeat a properly supported motion for summary

judgment." Anderson, 477 U.S. at 257.
 

 In this case, plaintiff's burden is more onerous

than that of the usual civil litigant opposing a summary

judgment motion. Ordinarily, for the nonmovant to avoid the

entry of summary judgment, the record must be such that a

reasonable factfinder could determine by a preponderance of

the evidence that the nonmovant is entitled to a verdict.

See id. at 252. Here, however, the record must contain
 

evidence which would allow the factfinder to conclude, by

clear and convincing evidence, that the nonmoving employee's

new position is "unreasonably inferior to the norm." Agosto-
 

de-Feliciano, 889 F.2d at 1220; see also Anderson, 477 U.S.
 

at 254 (holding that the clear and convincing evidence

standard, when applicable, must be taken into account at the

summary judgment stage). Although the "unreasonably inferior

to the norm" standard is not self-defining and its contours,

at times, may be difficult to ascertain, we have specifically

noted some situations where a factfinder would, in all

likelihood, be entitled to find an employee's new job

situation to be "unreasonably inferior." See generally id.
 

at 1219. Included among these are situations where (1) the

employee has been stripped of responsibilities that

 -10-
 10

previously were legitimately his/hers and the

responsibilities have been reassigned to someone who was the

employee's subordinate; (2) the employee has been stripped of

both supervisory status and his/her right to work

independently on projects of significance; and (3) the

employee has endured a sustained and significant general

worsening of employment conditions. See id.
 

 Even if the plaintiff has established the existence

of at least one genuine and material issue of fact under the

aforementioned standard, s/he is not necessarily entitled to

go to trial. Instead, the record also must permit the

factfinder to conclude by a preponderance of the evidence

that the changes in the nonmoving employee's work situation

were motivated by discrimination on the basis of political

affiliation. See id. at 1220. Assuming the nonmovant meets
 

that burden, "an employer then may seek to establish by a

preponderance of the evidence that the changes would have

been made regardless of political affiliation." Id. (citing
 

Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287
 

(1977); Cordero v. DeJesus- Mendez, 867 F.2d 1, 5 (1st Cir.
 

1989); Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 264
 

(1st Cir. 1987), cert. denied, 486 U.S. 1044 (1988)). 
 

 Reading the record in the light most favorable to

plaintiff, we believe there exist genuine and material

questions of fact which, if resolved in plaintiff's favor,

 -11-
 11

could result in his prevailing at trial. First of all, we do

not agree with the district court that the allegations in

plaintiff's sworn complaint, as elaborated upon in his sworn

declaration, are "conclusory." Rather, our review reveals a

series of factual assertions that are probative of whether

defendants are discriminating against plaintiff on the basis

of his political affiliation.7

 More importantly, we find that plaintiff's sworn

allegations, if believed, could allow a reasonable factfinder

to find for plaintiff. We note that the following

allegations by plaintiff have in no way been conclusively

rebutted:

 (1) that prior to his reassignment, plaintiff 
 directed, supervised, and coordinated the
 Fund's Finance Division; 

 (2) that since his reassignment, plaintiff has been
 assisting a person who previously was under his
 supervision;

 (3) that since his reassignment, plaintiff has not 
 been delegated the functions and duties of his 
 new job title;

 (4) that since his reassignment, plaintiff only has
 been assigned clerical tasks which take ten 
 minutes a day to perform;

 (5) that since his reassignment, plaintiff has been
 deprived of his supervisory status;

 (6) that since his reassignment, plaintiff has been
 placed in a lower pay scale where he no longer 
 can obtain certain pay raises;

 

7. The assertions at issue are set forth in Section I of
this opinion.

 -12-
 12

 (7) that plaintiff is a known member of the NPP;

 (8) that plaintiff's prior position was filled by 
 members of the PDP; and

 (9) that everyone who was demoted during the 1985 
 reorganization was affiliated with the NPP.

Simply put, we view sworn allegations (1)-(6) as a sufficient

evidentiary basis for a reasonable factfinder to find by

clear and convincing evidence that plaintiff's current

position is "unreasonably inferior to the norm."8

Similarly, we believe that allegations (7)-(9) could

constitute an adequate foundation for that same factfinder to

conclude by a preponderance of the evidence that defendants

were motivated by discrimination on the basis of political

affiliation. Accordingly, we find that the district court

should not have entered summary judgment on plaintiff's

Agosto-de-Feliciano claim insofar as that claim was seeking
 

equitable relief.9 

 

8. We note the similarity between these allegations and the
examples of situations that we previously indicated should go
to the jury. See Agosto-de-Feliciano, 889 F.2d at 1219.
 

9. In their brief, defendants go to great lengths to assert
a "changeover" defense. See generally Agosto-de-Feliciano,
 
889 F.2d at 1220-22. In so doing, they argue that plaintiff
was transferred as part of a legitimate reorganization of the
Fund in 1985. See supra note 1. As stated, defendants'
 
changeover defense may articulate a legitimate reason for
plaintiff's reassignment. However, it makes no attempt to
explain why the reorganization took place along the political
lines alleged by plaintiff. Accordingly, there remain
genuine issues of material fact as to whether the 1985
reorganization was pretextual. See id. at 1221-22.
 
 Moreover, in presenting us with their changeover
argument, defendants do not deny or attempt to explain why

 -13-
 13

B. The Due Process Clause
 

 Plaintiff's final argument is that the district

court erred in granting defendants summary judgment on his

claim, as set forth generally in his complaint, that

"plaintiff's property interests are being adversely affected

by defendants['] actions . . . in violation of [plaintiff's]

rights to due process under the Fourteenth Amendment. . .

."10 We disagree with plaintiff's contention.

 Plaintiff's due process claim depends on his having

been deprived of a property right without due process of law.

See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538
 

(1985). To establish such a right, "a person clearly must

have more that an abstract need or desire for it. [S/h]e

must have more than a unilateral expectation of it. [S/h]e

 

plaintiff (1) has not been delegated the functions and duties
of his new job title, (2) is assigned only clerical tasks
which take ten minutes a day to perform, or (3) is now
assisting a former subordinate. Nor do defendants
conclusively refute plaintiff's claim that he now is in a
lower pay scale. Accordingly, defendants' changeover defense
does not provide us with an alternative basis for affirming
the district court's entry of summary judgment in favor of
defendants on plaintiff's Agosto-de-Feliciano claim for
 
equitable relief. 

10. On appeal, plaintiff alleges for the first time that the
property interests of which he was unconstitutionally
deprived were the right to remain Chief of the Fund's Finance
Division and the right to remain in the same salary scale
regardless of his reassignment.

 -14-
 14

must, instead, have a legitimate claim of entitlement to it."

Board of Regents v. Roth, 408 U.S. 564, 577 (1972).
 

Moreover, a property right is not created by the

Constitution, but is created and defined in dimension "`by

existing rules or understandings that stem from an

independent source such as state law.'" Loudermill, 470 U.S.
 

at 538 (quoting Roth, 408 U.S. at 577). 
 

 In the proceedings below, plaintiff's attempts at

explication of his due process claim consisted of the

aforementioned paragraph in his complaint and two paragraphs

in his memorandum of law in opposition to defendants' motion

for summary judgment, wherein he recaps the paragraph in his

complaint and points out, irrelevantly, that defendants are

not claiming qualified immunity on his due process claim. In

fact, plaintiff never clearly identified the property right

or rights of which he allegedly was deprived.11 Nor did he

attempt (1) to identify the source of any such right or

rights; (2) to explain how the right or rights are entitled

to constitutional protection; (3) to specify the facts which

allegedly support his due process claim; or (4) to cite any

legal authority tending to strengthen his claim. In light of

 

11. At one point in his memorandum in opposition to
defendants' summary judgment motion, plaintiff seems to be
asserting that he was deprived of continued public employment
to which he was legitimately, and therefore constitutionally,
entitled. See Roth, 408 U.S. at 577. As the district court
 
noted, this argument fails for the simple reason that
plaintiff has remained employed by the Fund. 

 -15-
 15

these omissions, it is apparent that plaintiff presented his

due process claim to the district court in only a most

perfunctory manner. And, it is well settled that arguments

made in a perfunctory manner below are deemed waived on

appeal. See, e.g., World Univ., Inc., slip op. at 13 (citing
 

Buenrostro v. Collazo, 973 F.2d 39, 44 (1st Cir. 1992)); see
 

also McCoy v. Massachusetts Inst. of Technology, 950 F.2d 13,
 

22 (1st Cir. 1991) ("[T]heories not raised squarely in the

district court cannot be surfaced for the first time on

appeal.") (citations omitted), cert. denied, 112 S. Ct. 1939
 

(1992); cf. Kensington Rock Island Ltd. Partnership v.
 

American Eagle Historic Partners, 921 F.2d 122, 125 (7th Cir.
 

1990) ("`A party opposing a summary judgment motion must

inform the trial judge of the reasons, legal or factual, why

summary judgment should not be entered. If it does not do

so, and loses the motion, it cannot raise such reasons on

appeal.'") (quoting Liberles v. County of Cook, 709 F.2d
 

1122, 1126 (7th Cir. 1983)). 

 Obviously, the district court made significant

efforts to discern and address the merits of plaintiff's due

process claim.12 In this instance, however, we prefer to

 

12. The district court construed plaintiff's claim as one
for the deprivation of the right to continue as Chief of the
Fund's Finance Division and/or the right to remain in the
same salary scale regardless of reassignment, and then found
that plaintiff had no such right or rights. In fact, it
appears that the district court's construction of his claim
provided the basis for plaintiff's due process argument on

 -16-
 16

avoid the constitutional ruling.13 See, e.g., El Dia, Inc.
 

v. Hernandez Colon, 963 F.2d 488, 494 (1st Cir. 1992) ("`It
 

has long been a basic tenet of the federal courts to eschew

the decision of cases on constitutional grounds unless and

until all other available avenues of resolution [are]

exhausted.'") (quoting Aggarwal v. Ponce School of Medicine,
 

745 F.2d 723, 726 (1st Cir. 1984)). Nonetheless, we affirm

the district court's entry of summary judgment against

plaintiff on his due process claim.

 III.
 

 CONCLUSION
 

 For the reasons herein stated, we affirm the

district court's entry of summary judgment in favor of

defendants on plaintiff's constructive discharge claim and

plaintiff's Agosto-de-Feliciano claim for civil damages. We
 

also affirm the court's entry of summary judgment in favor of

defendants on plaintiff's due process claim. However, we

reverse and remand for further proceedings the court's entry

 

appeal. 

13. We may, of course, "`affirm the entry of summary
judgment on any independently sufficient ground made manifest
by the record.'" World Univ., Inc., slip op. at 4 (quoting
 
Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st
 
Cir. 1992)).

 -17-
 17

of summary judgment in favor of defendants on plaintiff's

Agosto-de-Feliciano claim for equitable relief.
 

 Affirmed in part, reversed in part. Remanded for
 

further proceedings consistent with this opinion.
 

 "Concurrence follows"

 -18-
 18

 TORRUELLA, Circuit Judge (Concurring). Although I
 

concur with the majority I am of the view that Agosto-de-
 

Feliciano v. Aponte-Rogue, 889 F.2d 1209 (1st Cir. 1989) (en
 

banc), particularly its so-called "changeover" defense, see
 

ante at 13 n.9, no longer reflects the law of the land as
 

articulated by the Supreme Court in Rutan v. Republican Party
 

of Illinois, 110 S. Ct. 2729 (1990). I therefore do not
 

consider Agosto-de-Feliciano authoritative circuit precedent.
 

 -19-
 19