Lowes v. Cabletron                          CV-96-077-M    12/13/96
                  UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE


Darlene Lowes,
       Plaintiff

       v.                                       Civil No. 96-77-M

Cabletron Systems, Inc.,
       Defendant



                              O R D E R


       Darlene Lowes brings this breach of contract action against
her former employer, Cabletron Systems, Inc., claiming that
Cabletron wrongfully refused to honor certain stock options
issued to her under the Cabletron 1989 Equity Incentive Plan.
She also claims that Cabletron wrongfully refused to issue a
number of shares in Gratias Corporation to her, pursuant to the
Gratias Corporation 1989 Restricted Stock Plan.  Cabletron denies
that Lowes is entitled to any additional shares of either
Cabletron Systems, Inc. or Gratias Corporation, and moves for
summary judgment.  For the reasons discussed below, however,
Cabletron has failed to demonstrate that it is entitled to
judgment as a matter of law.

## Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling upon a party's motion for summary judgment, the court must, "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If the moving party carries its burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition." Mesnick v. General Electric Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). See also Fed. R. Civ. P. 56(e). That burden is discharged only if the cited disagreement relates to a genuine issue of material fact. Wynne v. Tufts University School of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 507 U.S. 1030 (1993). "In this context, 'genuine' means that the

2

evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." <u>United States v. One Parcel of Real Property, Etc.</u>, 960 F.2d 200, 204 (1st Cir. 1992) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).

**Facts**

I.   <u>The Stock Awards and Stock Options</u>.

Lowes began working for Cabletron in July of 1985.  As a benefit of her employment, she was awarded 1,750 shares of stock in Gratias Corporation, pursuant to the Gratias Corporation 1989 Restricted Stock Plan.  Although Lowes actually owned all of the shares of stock, they remained "unvested" and subject to forfeiture under certain conditions until they "vested."  Those shares were to have vested according to the following schedule:

        1.   5/31/1989 - 250 shares;
        2.   5/31/1990 - 500 shares;
        3.   5/31/1991 - 500 shares; and
        4.   5/31/1992 - 500 shares.

Accordingly, in July of 1989, Lowes received the 250 shares that vested on May 31, 1989.  And, in June of 1990, she received the

3

500 shares that vested on May 31, 1990. She claims that because her employment was terminated by reason of her total and permanent disability, she is entitled, under the terms of the Restricted Stock Plan, to the remaining 1000 "unvested" shares of Gratias stock. The provision in the Gratias Corporation 1989 Restricted Stock Plan upon which Lowes relies provides:

> <u>Forfeiture</u>. Unvested Shares shall be forfeited to the Company if the full-time employment of the Participant with Cabletron and its wholly-owned subsidiaries terminates for any reason, provided, however, that in the event the employment of the Participant terminates by reason of death or <u>permanent disability</u> (<u>as determined by the Board of Directors of the Company in its sole discretion</u>) of the Participant, all Unvested Shares shall immediately become Vested Shares.

Gratias Corporation 1989 Restricted Stock Plan, at para 7(c) (emphasis added). At a minimum, however, she says that she is entitled to the 500 shares that vested on May 31, 1991, the date on which she claims Cabletron terminated her employment. Cabletron disputes those assertions.

As an additional benefit of her employment, Lowes was given options to purchase up to 1000 shares of Cabletron stock. Pursuant to Cabletron's 1989 Equity Incentive Plan, those stock options were exercisable according to the following schedule:

4

```
1.   12/20/1989 - 200 shares;
2.   12/20/1990 - 200 shares;
3.   12/20/1991 - 200 shares;
4.   12/20/1992 - 200 shares; and
5.   12/20/1993 - 200 shares.
```

In January of 1990, Lowes exercised her option to purchase 200 shares of Cabletron stock, in accordance with the option that became exercisable on December 20, 1989.  And, in January of 1991, she exercised her option to purchase 200 additional shares, in accordance with the option that became exercisable on December 20, 1990.

Again, because she says the she was discharged as a result of her total and permanent disability, she claims that she is entitled, pursuant to the terms of the Equity Incentive Plan, to exercise her options to purchase the remaining 600 shares of Cabletron stock.  The Cabletron Systems, Inc. 1989 Equity Incentive Plan provides:

> If a Participant ceases to be an Employee by reason of retirement with consent of the Company after attainment of age 62, death or total and permanent disability (as determined by the Committee), the following will apply:
>
> (a)  Subject to paragraph (c) below, each Option and Stock Appreciation Right held by the Participant when his or her employment ended will immediately become exercisable in full and will continue to be exercisable until the earlier of (1) the third anniversary of the date on which his or her employment ended, and (2) the

5

> date on which the Award would have terminated had the Participant remained an Employee.

Cabletron Systems, Inc. 1989 Equity Incentive Plan at para. 7.1 (emphasis added). Cabletron denies that the foregoing provision entitles Lowes to exercise the disputed stock options.

II. <u>Lowes' Employment and Disability History</u>.

In May of 1990, Lowes left work, claiming that she was unable to function due to stress, anxiety, and depression. She remained an employee of Cabletron, but began receiving long term disability benefits. In November of 1990, she admitted herself to Portsmouth Pavilion for psychological treatment. Lowes was diagnosed as suffering from major depression and a mixed personality disorder with obsessive-compulsive and histrionic features. She was discharged approximately two weeks later.

Also in 1990, Lowes filed a claim for workers' compensation. After holding a hearing on Lowes' claims, a New Hampshire Department of Labor Hearings Officer denied her request for workers' compensation benefits. Plaintiff appealed that decision to the Compensation Appeals Board, which reversed the hearings officer's decision and ruled that, "The claimant is found to be disabled from employment as of May 17, 1990 due to a depressive

6

disorder caused by the condition of her employment." Decision of the Compensation Appeals Board at 3-4 (August 12, 1991). Approximately three weeks before the Appeals Board issued its decision, however, Cabletron and Lowes reached an agreement to settle all of her workers' compensation claims. In exchange for the payment of $18,000, Lowes executed a general release and expressly adopted the Labor Department Hearings Officer's decision (which denied her workers' compensation claim) "as being final and binding in all jurisdictions."

Based on her depressive disorder, Lowes also applied for Social Security Disability benefits. And, in March of 1992, the Administrative Law Judge who considered her claim ruled that she met the disability insured status requirements under the Social Security Act as of May 17, 1990.

By letter dated April 25, 1991, Cabletron terminated Lowes' employment, effective that date. Apparently, however, Cabletron continued to pay Lowes' health insurance premiums after that date. Accordingly, her COBRA election form shows her employment termination date as May 31, 1991. Lowes points to that election form as evidence that there is a genuine issue of material fact regarding her termination date. If the effective date of her

7

termination was May 31, 1991, she would be entitled, at a minimum, to the additional 500 shares of Gratias Corporation stock that vested on that date.

## Discussion

I. Lowes' Termination Date.

As an employee at will, Lowes was subject to immediate termination at the discretion of her employer provided, of course, that the termination did not violate public policy. See Cloutier v. The Great Atlantic & Pacific Tea Co., Inc., 121 N.H. 915, 919-20 (1981). Lowes does not claim that Cabletron wrongfully terminated her. She merely alleges that the effective date of her termination is both material and genuinely disputed.

The record does not support Lowes' claim. The April 25, 1991, letter from Cabletron to Lowes is clear and unambiguous. As was its right, Cabletron terminated Lowes "effective this date" (i.e., April 25, 1991). The fact that Lowes "believed" that her employment was not terminated until May 31, 1991, is of little moment because she has failed to produce any credible evidence that would support such a conclusion. The COBRA election form (which indicates that the date of her termination was May 31, 1991) does not support her claim. Instead, it merely

8

suggests that Cabletron continued paying certain health insurance benefits on behalf of Lowes <u>after</u> her termination. In short, Cabletron notified Lowes that her employment by the company was terminated effective April 25, 1991, and no reasonable finder of fact could conclude otherwise on the record presented.

II. <u>Lowes' Entitlement to Stock Because of Her Disability</u>.

That Lowes was terminated <u>before</u> May 31, 1991, when the additional 500 shares of Gratias stock would have vested, does not end the inquiry into her entitlement to the disputed shares of Cabletron and Gratias Corporation stock. Although Cabletron denies it, Lowes asserts that she was terminated because of a total and permanent disability. Accordingly, she claims that she is entitled to the remaining 1000 shares of Gratias Corporation pursuant to paragraph 7(c) of the 1989 Restricted Stock Plan. Moreover, she claims that she is entitled to exercise her options to purchase the remaining 600 shares of Cabletron stock pursuant to paragraph 7.1 of the Equity Incentive Plan.[1]

---

[1] It is unclear whether Lowes would be entitled to an award of the disputed shares of stock if she prevails. It appears that Lowes might only be entitled to a fair determination by the Cabletron Board of Directors regarding whether, in its sole discretion, Lowes' employment was terminated by reason of her disability. <u>See, e.g.</u>, <u>Petralia v. AT&T Global Information Solutions Company</u>, No. C-94-533-M, slip op. (D.N.H. July 7, 1996) (Although defendant wrongfully terminated plaintiff's short-term

9

By letter dated October 7, 1993, Lowes notified Cabletron of her intention to exercise her "stock appreciation rights" (presumably under the provisions of both the Equity Incentive Plan and the Restricted Stock Plan), asserting that she met the two conditions necessary to exercise those rights: (1) her employment was terminated; and (2) at least in her view, it was terminated because of her total and permanent disability. In December of 1994, Cabletron's Board of Directors considered, at least in part, Lowes' request. However, because the board believed that the general release (executed in settlement of her workers' compensation claims) precluded Lowes from claiming that she suffered from a work-related disability, it concluded that "it was not necessary for the Board to determine whether the termination of her employment occurred by reason of permanent disability." Letter of Michael Myerow dated December 16, 1994.

Lowes argues that because her employment was terminated due to her illness, which did not have a foreseeable end, and, because of her "undetermined availability to return to suitable

---

disability benefits, the court did not award her the full amount of those benefits. Instead, it reinstated her short-term benefits and remanded the matter to the ERISA fiduciary to determine in the first instance whether they were properly terminable and, if so, to terminate them in accordance with the provisions of the ERISA-governed plan).

work" (Letter of Linda F. Pepin dated April 25, 1991), a trier of fact could reasonably conclude that she was terminated because of a permanent and total disability. Implicitly, she argues that the referenced total and permanent disability need not be work-related and, therefore, the terms of the general release do not bar her from asserting that her employment was terminated by reason of her disability. That argument is certainly supported by the plain language of the stock agreements, neither of which states that an employee's disability must be work related in order for him or her to take advantage of the early vesting provisions. And, because the board of directors never determined whether her employment was terminated by reason of a permanent and total disability, she asserts that Cabletron breached the terms of the governing stock agreements when it refused to honor her request to exercise her rights under those agreements.

Viewing the record in the light most favorable to plaintiff, it is apparent that Cabletron is not entitled to summary judgment. The general release of claims executed by Lowes in connection with her workers' compensation claims does not appear to preclude her from asserting that she was terminated because of a permanent and total disability. It merely precludes her from asserting that her disability was work related. Accordingly, it

11

would seem that Cabletron's board of directors had an obligation to determine, fairly and in good faith, whether her employment was terminated as a result of a permanent and total disability. The board of directors never made that determination.

At this juncture, the _actual_ reason for plaintiff's termination is of little significance. The essence of the parties' dispute appears to turn on whether Cabletron fulfilled its contractual obligation to determine, in good faith, whether Lowes' employment was terminated by reason of her disability. Because Cabletron acknowledges that the Board of directors never addressed that issue (despite repeated requests by plaintiff that it do so) and because it has failed to demonstrate that it was excused from carrying out that contractual (or fiduciary) obligation, it is not entitled to judgment as a matter of law.

Finally, Cabletron asserts that plaintiff's claims are barred by the statute of limitations. The court previously addressed that issue when it denied Cabletron's motion to dismiss, and further discussion is unwarranted. Plaintiff's claims were brought in a timely fashion.

12

## Conclusion

Despite the fact that it is clear that Cabletron terminated Lowes' employment on April 25, 1991 (and not, as she claims, on May 31), Cabletron is not entitled to summary judgment.

Parenthetically, the court notes that neither Lowes nor Cabletron has addressed a potentially dispositive legal issue: whether the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"), governs plaintiff's claims under either (or both) of the employee stock plans and, if so, whether her state law contractual claims are preempted. Compare Vizcaino v. Microsoft Corp., 97 F.3d 1187 (9th Cir. 1996) (the parties agreed, and the court assumed, that plaintiff's claims for benefits under an employee stock option plan were governed by state law) with Moench v. Robertson, 62 F.3d 553 (3rd Cir. 1995) (noting that ERISA does contain specific provisions which govern employee stock option plans), cert. denied, 116 S.Ct. 917 (1996). Of course, if ERISA governs plaintiff's claims it will also affect her right to a jury trial and the applicable standard of judicial review.

In light of the foregoing, Cabletron's motion for summary judgment (document no. 10) is denied.

13

SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

December 13, 1996

cc:  Richard C. Mooney, Esq.
     Andru H. Volinsky, Esq.