Alex Wayne BOLT, Plaintiff–Appellant,

v.

UNITED STATES of America, U.S. Department of the Interior; Bureau of Land Management; Ptarmigan Co., Defendants–Appellees.

No. 90–35440.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1991.

Decided Sept. 16, 1991.

---

Frederick H. Boness, Preston, Thorgrimson, Shidler, Gates & Ellis, Anchorage, Alaska, for plaintiff-appellant.

John T. Stahr, U.S. Dept. of Justice, Washington, D.C., for defendants-appellees.

Before WRIGHT and O'SCANNLAIN, Circuit Judges, and PRO,[*] District Judge.

O'SCANNLAIN, Circuit Judge:

We consider whether the annual recordation requirements of the Federal Land Policy and Management Act of 1976 ("FLPMA") are applicable to mining claims located within national parks.

## I

Ptarmigan Company, Inc., is a corporation owned almost exclusively by Kirk Stanley. Ptarmigan owned a number of lode mining claims, the most valuable of which were the unpatented "Rambler Claims" in Wrangell–St. Elias National Park and Preserve near Nabesna, Alaska.

Under section 314 of FLPMA, codified at 43 U.S.C. § 1744, mining claims must be recorded annually with the Bureau of Land Management ("BLM") "prior to December 31 of each year." 43 U.S.C. § 1744(a) (FLPMA § 314(a)). The Department of Interior has ruled that holders of mining claims in national parks must register annually with the BLM in the fashion required by FLPMA. *See* 36 C.F.R. § 9.5

(relying principally upon the Mining in Parks Act of 1976 ("MPA") for statutory authority).

On December 30, 1982, Stanley traveled the 300 miles to Anchorage to file the required affidavit for 1982. (Unbeknownst to Stanley, the Secretary of the Interior had promulgated a rule that permitted the annual filing to be accomplished by mail postmarked by December 30.) Unfortunately, Stanley was delayed by a winter storm, and did not arrive in Anchorage until 6:00 p.m. Believing the BLM office closed at that hour—it was not—Stanley instead went by the office on the following day, Friday, December 31. Finding the office closed for a national holiday, Stanley mailed his affidavit to the BLM on that day. It was received on Monday, January 3, 1983.

In May 1983, Ptarmigan began negotiations with Alex Wayne Bolt to lease the Rambler Claims. Ptarmigan and Bolt executed a written lease on July 1, 1983, conditioned upon National Park Service ("NPS") approval of Bolt's plan of operation. The NPS gave the go-ahead on July 18, though expressly advising that "[t]his action … should in no way be construed as a final determination of validity of the claims which is yet to be made." Bolt began construction of a road to the claims and other preparations, ultimately expending in excess of $250,000.

On December 13, 1983, the BLM notified Ptarmigan by letter that the Rambler Claims were void due to Ptarmigan's late filing for 1982. Ptarmigan appealed to the Interior Board of Land Appeals ("IBLA"), and Bolt intervened. The appeal was stayed pending the Supreme Court's decision in *United States v. Locke,* 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985). Following *Locke,* the IBLA denied Ptarmigan's appeal in relevant part.[1]

---

[*] The Honorable Philip M. Pro, United States District Judge for the District of Nevada, sitting by designation.

[1]. In *Locke,* the Court essentially ruled that Congress meant what it said when it provided that failure to comply with FLPMA § 314 would result in a declaration of abandonment of the

mining claim. In that case, the holders of mining claims worth millions of dollars missed by one day the December 30 deadline for recording the claim for 1980. *See* 471 U.S. at 89–91, 105 S.Ct. 1785, 1789–91, 85 L.Ed.2d 64. The Court concluded that the claims were forfeited and that the valuable mineral deposits therein es-

Intervenor Bolt filed a complaint for review in the federal district court, asserting numerous claims. Among the contentions were the following: (1) FLPMA § 314 does not apply on its own terms to mining claims located in national parks; (2) the regulation adopted pursuant to the MPA that applies FLPMA § 314 to mining claims located in national parks, 36 C.F.R. § 9.5, exceeds statutory authority; (3) the NPS's approval of the plan of operation estopped the BLM from challenging the validity of the mining claims; and, (4) the forfeiture of the mining claims amounts to a taking under the fifth amendment.

On February 7, 1989, visiting District Judge Muecke dismissed the challenge to the regulation on the ground that the six-year statute of limitations applicable to actions against the government had elapsed. Bolt appeals the dismissal.

In a lengthy order issued March 30, 1990, District Judge Holland disposed of all remaining counts on a motion for summary judgment, although neither party had moved for summary judgment on the estoppel or taking issues. The court concluded that FLPMA § 314 applied to mining claims located in national parks, according substantial deference to the interpretation of the Secretary of the Interior. The taking claim was dismissed under a straightforward application of *Locke.* Finally, the estoppel claims failed because Ptarmigan was not shown to be ignorant of the facts and because Stanley could not prove that he relied to his detriment on the NPS's approval. Bolt appeals this order as well.

## II

Bolt challenges the government's application of FLPMA § 314 to mining claims located within national parks. He makes a two-pronged attack. First, Bolt insists that section 314 does not apply directly to such claims. Then, assuming we agree with the first contention, Bolt contends that the regulation applying section 314 to claims within national parks, 36 C.F.R. § 9.5, exceeded the agency's statutory authority. Bolt must convince us of both points in order to persuade us that Ptarmigan need not have complied with section 314's strictures.

### A

Section 314 nominally applies to "[t]he owner of an unpatented lode or placer mining claim located prior to [the date of FLPMA]." 43 U.S.C. § 1744(a). The Secretary of the Interior argues that the statute includes claims within national parks. Bolt contends that the statute does not. Our resolution of this dispute involves a preliminary determination of the degree of deference owed to the Secretary's interpretation, if any, and then an examination of the Secretary's conclusion guided by the appropriate degree of deference.

### 1

■ The interpretation of a statute by the agency charged with its administration is generally entitled to "considerable weight." *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). As we recently explained,

"if the statute is silent or ambiguous with respect to the specific issue," "the court does not simply impose its own construction on the statute .... Rather, ... the question for the court is whether the agency's answer is based on a permissible construction of the statute."

*Transpacific Westbound Rate Agreement v. Federal Maritime Comm'n,* 938 F.2d 1025, 1028 (9th Cir.1991) (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782). If the agency's construction does not conflict with the clear language of the statute, we will

cheated to the federal government. The Court rejected arguments that Congress had intended December 31 to be the deadline, *see id.* at 93–96, 105 S.Ct. at 1791–93, that a holder's intent to abandon need be shown, *see id.* at 97–100, 105 S.Ct. at 1794–96, that there was "substantial compliance" with the statute, *see id.* at 100–02, 105 S.Ct. at 1795–96, and that the forfeiture

provision was unconstitutional, *see id.* at 103–10, 105 S.Ct. at 1797–1801. We too have insisted upon strict compliance with the terms of section 314. *See Red Top Mercury Mines v. United States,* 887 F.2d 198 (9th Cir.1989) (adopting District Judge Holland's order dismissing challenge to claim forfeiture).

uphold the agency's position if reasonable. *Id.* at 1030 (citing *Chevron*, 467 U.S. at 845, 104 S.Ct. at 2783). "[I]t is axiomatic that the Secretary's interpretation need not be the best or most natural one," so long as it is reasonable. *Pauley v. Bethenergy Mines, Inc.,* ── U.S. ──, 111 S.Ct. 2524, 2537, 115 L.Ed.2d 604 (1991) (citation omitted).

Notwithstanding these general principles, Bolt argues for an exception to *Chevron* deference where the statute at issue calls for a forfeiture. The pundits state that "the law abhors a forfeiture." According to Bolt, forfeiture statutes must be narrowly construed. The Secretary's interpretation of section 314 was not the most narrow possible, the argument goes, and thus we should not accord that interpretation *Chevron* deference.

Previously, we have questioned the " 'canon' of statutory construction" that civil forfeiture statutes are to be narrowly construed. *See United States v. 594,464 Pounds of Salmon,* 871 F.2d 824, 827 n. 6 (9th Cir.1989) (citing *United States v. $122,043,* 792 F.2d 1470, 1477 (9th Cir. 1986)). There is no punitive intent behind this forfeiture statute. The Supreme Court itself, in *Locke,* described a deference test for the Secretary's construction of the very statute at issue here, FLPMA § 314. *See Locke,* 471 U.S. at 96, 105 S.Ct. at 1793 ("These regulations provide a conclusive answer to appellees' claim, for where the language of a filing deadline is plain and the agency's construction completely consistent with that language, the agency's construction simply cannot be found 'sufficiently unreasonable' as to be unacceptable.") (quoting *FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981)).

At least in this case, we adhere to the principle that a statute is best interpreted by the agency charged with its application.

### 2

■ We next inquire into the reasonableness of the Secretary's "broad" construction of section 314. The MPA and FLPMA were enacted within a month of one another. Each act has a "recordation of mining claims" section, but only FLPMA has an annual filing requirement. The Department of the Interior issued regulations in 1977 requiring miners with claims in national parks to satisfy FLPMA's annual filing provisions. Bolt contends that Congress intended otherwise, enacting FLPMA simply for application to BLM-managed lands, while the MPA was intended to capture the complete requirements for maintenance of a claim within a national park.

Section 314, on its face, does not limit its requirements to land governed by the BLM. It requires that "[t]he owner of an unpatented lode or placer mining claim" comply with its provisions. 43 U.S.C. § 1744(a). Significantly, and unlike several other sections within FLPMA, section 314 is not limited to "public lands," which by FLPMA definition would not include lands in national parks. *See id.* § 1702(e) (FLPMA § 103(e)) (defining "public lands" to include only BLM-managed land).

While much of FLPMA applies only to the BLM, nothing within the Act provides that FLPMA has no application to non-BLM lands. Some provisions expressly apply to the Department of Agriculture as well. Although most sections applicable to more than just BLM-managed land are explicitly designated as such, this is not invariably so.[2]

**2.** Frankly, we are hampered in interpreting section 314 and FLPMA generally by several enigmatic passages and apparent errors. *See Locke,* 471 U.S. at 120–21, 105 S.Ct. at 1806–07 (Stevens, J., dissenting) (pointing to at least one typographical error and other puzzlements within section 314). For example, FLPMA has several provisions for the conveyance of "omitted lands," which are supposed to be "public lands" that were unsurveyed. *See* 43 U.S.C. § 1721(a), (b) (FLPMA § 211(a), (b)). As we have just mentioned, "public lands" are by definition BLM-managed; indeed, the text of FLPMA § 211(a) and (b) would seem to confirm the limitation to BLM lands. Nonetheless, here Congress saw the need specifically to exempt "lands within the National Forest System, ... the *National Park System,* the National Wildlife Refuge System, and the National Wild and Scenic Rivers System" from the "omitted lands" provisions. *Id.* § 1721(f) (FLPMA § 211(f)) (emphasis added). Fortunately, our considera-

Bolt attempts to bolster his argument by parsing various versions of the Secretary's regulations governing mining claims on park lands, *see* 36 C.F.R. Part 9. First, Bolt emphasizes that the stated statutory authority for the regulations is the MPA, rather than FLPMA, suggesting that the Secretary did not regard FLPMA as the basis for requiring annual recordation of mining claims located on national park land. Second, interim regulations published shortly after FLPMA was enacted did not require such compliance; only the 1977 final regulations ruled that "annual filing of notice must be made under Section 314 of FLPMA and implementing regulations."

■ From the regulation's terse statement it is impossible to discern whether the Secretary had concluded that FLPMA § 314, by its own terms, covered mining claims on NPS land, or whether the Secretary simply wished to subject claimants on NPS lands to the same requirements as those with claims on BLM-administered land. However, even if the older regulations and the stated statutory authority for the regulations do reflect the Secretary's former equivocacy over the application of section 314 to claims in national parks, the Secretary now regards FLPMA § 314 as applying directly to mining claims on NPS land. The Secretary's past hesitancy to reach this conclusion, if any, does not suggest to us that the Secretary's current position is "unreasonable." *See Chevron,* 467 U.S. at 863, 104 S.Ct. at 2792 ("An initial agency interpretation is not instantly carved in stone.").

■ Nor do we regard the differing recordation requirements of FLPMA and the MPA to be fatal to the government's position. The MPA mandates only a one-time recordation of mining claims within national park lands. 16 U.S.C. § 1907. However, the evident purpose of the MPA's recordation requirement is to supply data for certain studies that the Secretary was required to conduct. *See* 16 U.S.C.

§§ 1905–1906 (omitted) (MPA §§ 6–7); *see also* H.R.Rep. No. 1428, 94th Cong., 2d Sess. 3, *reprinted in* 1976 U.S.Code Cong. & Admin.News 2487, 2488 (describing purpose of MPA).

In contrast, the purpose of FLPMA's recordation requirements is to ensure that federal land records are current. *See Locke,* 471 U.S. at 87, 105 S.Ct. at 1788–89. FLPMA, unlike the MPA, is a comprehensive land-management act. In the absence of express statutory prohibition, the Secretary appears to interpret these acts together as requiring no less stringent rules for maintaining claims on national park and preserve lands (usually regarded as more sensitive) than on other federal lands. We cannot regard this interpretation as "unreasonable" or inconsistent with the purpose of FLPMA.

We conclude that the Secretary's interpretation of FLPMA § 314 is not unreasonable. We recognize that there is evidence in the legislative record that at least some legislators believed FLPMA not to apply to NPS lands. We also are puzzled by the placement of section 314 in a title of FLPMA largely devoted to BLM administration. However, these points merely illustrate that the evidence is ambiguous, not that the Secretary's interpretation is unreasonable. Ptarmigan was required to comply with the annual recordation requirements therein, just like any other "owner of an unpatented lode or placer mining claim."

### B

Because we conclude that FLPMA § 314 is reasonably interpreted to apply directly to claims on national park land, we need not reach Bolt's separate challenge to the statutory authority for 36 C.F.R. § 9.5. Bolt raises serious questions concerning the Secretary's reliance upon the MPA for the regulation. There is also a novel issue concerning the applicable statute of limita-

tion of this case does not require us to unravel all of the mysteries of FLPMA; it suffices to note that section 211 supports the view that

Congress expected portions of FLPMA to apply to NPS lands even absent specific mention of such lands within the statute.

tions, if any, to Bolt's challenge of the regulations. However, our analysis of FLPMA and the MPA satisfies us that the Secretary's construction of FLPMA § 314 independently to mandate Ptarmigan's compliance with the annual recordation requirements is in keeping with Congressional intent.

### III

Bolt next argues that the government was estopped from declaring Ptarmigan's claim to be invalid. Bolt argues that the NPS would not have approved of the plan of operation in July 1983 unless it had concluded that Ptarmigan's mining claim was valid. Bolt buttresses his argument by referring to a 1987 unpublished memorandum that notes the NPS's practice of checking the validity of title to a mining claim before approving plans of operation. *See* Memorandum & Order at 6, *Northern Alaska Environmental Center v. Hodel,* No. J85–009 Civ. (D.Alaska Dec. 12, 1987) (von der Heydt, J.).

In *Locke,* there was evidence that the claim holders' failure to comply with FLPMA § 314 had been induced or encouraged by the government, which had provided erroneous information indicating that the filing deadline was December 31. *See* 471 U.S. at 89 & n. 7, 105 S.Ct. at 1789–90 & n. 7; *id.* at 110–11, 105 S.Ct. at 1800–01 (O'Connor, J., concurring); *id.* at 114, 105 S.Ct. at 1803 (Powell, J., dissenting); *id.* at 128, 105 S.Ct. at 1810 (Stevens, J., dissenting). The Court left open the possibility that an estoppel claim might have been viable under those facts. *See id.* at 90 n. 7, 105 S.Ct. at 1790 (declining to express an opinion on a possible estoppel argument); *id.* at 111, 105 S.Ct. at 1801 (O'Connor, J.,

concurring) (suggesting that these "unusual facts" might support such a claim). There is no suggestion by Bolt that the government caused or encouraged the violation of section 314. Nonetheless, we will assume without deciding that an estoppel claim is at least possible where the government knows that a claim is invalid but nonetheless permits the holder and other parties to plan further activities on the forfeited claim.

The elements of estoppel are: (1) knowledge of the true facts by the party to be estopped; (2) intent to induce reliance or actions giving rise to a belief in that intent; (3) ignorance of the true facts by the relying party; and (4) detrimental reliance. *Watkins v. United States Army,* 875 F.2d 699, 709 (9th Cir.1989) (en banc), *cert. denied,* —— U.S. ——, 111 S.Ct. 384, 112 L.Ed.2d 395 (1990). Additionally, for the government to be estopped there must be affirmative misconduct (not mere negligence) and a serious injustice outweighing the damage to the public interest of estopping the government. *See id.* at 707–08.

Bolt's estoppel argument most clearly fails on the affirmative misconduct prong, which requires "an affirmative misrepresentation or affirmative concealment of a material fact by the government." *Id.* at 707.[3] Even if Ptarmigan and Bolt reasonably could have relied upon the NPS's approval of the plan of operation, there is not even a contention, let alone a shred of evidence, that the approval was not based on a merely negligent oversight. No one told either party that the recorded papers had been checked, or would be checked, or that the filing was sufficient. Thus, no affirmative misconduct appears, and the estoppel argument fails.[4]

---

**3.** Bolt's reliance on *Tosco Corp. v. Hodel,* 611 F.Supp. 1130, 1206 (D.Colo.1985), *vacated as moot,* 826 F.2d 948 (10th Cir.1987), is unavailing. Even assuming that *Tosco* retained some precedential value despite its vacation, its statement that "conduct based on a mistake of law will qualify as 'affirmative misconduct' if the refusal to estop the government will work an

inequitable or unjust result" is overbroad and inconsistent with *Watkins.*

**4.** In an unpublished disposition, we rejected a similar estoppel claim brought by Ptarmigan in a separate matter. *See Ptarmigan Co. v. Department of Interior,* 933 F.2d 1015 (9th Cir.1991) (table).

## IV

Finally, Bolt contends that the forfeiture of the mining claim constituted a "taking" under the fifth amendment. In *Locke,* the Court expressly rejected the notion that forfeiture by operation of FLPMA § 314(c) constituted a taking: " 'this Court has never required [Congress] to compensate the owner for the consequences of his own neglect.' " *Locke,* 471 U.S. at 107, 105 S.Ct. at 1799 (quoting *Texaco, Inc. v. Short,* 454 U.S. 516, 530, 102 S.Ct. 781, 792, 70 L.Ed.2d 738 (1982)). "Regulation of property rights does not 'take' private property when an individual's reasonable, investment-backed expectations can continue to be realized as long as he complies with reasonable regulatory restrictions the legislature has imposed." *Id.* (citations omitted).

## V

Bolt requested costs and attorney fees on appeal pursuant to 28 U.S.C. § 2412. The government's position, which has triumphed, obviously is "substantially justified." The request is denied.

The Secretary's interpretation of FLPMA § 314 to apply to mining claims in national parks is not unreasonable. There was no error in the rejection of Bolt's estoppel claim. There was no unconstitutional taking.

AFFIRMED.