**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-19-1206-LGS |
| SERGIO LOPEZ MIRANDA; ESMERALDA MIRANDA, | Bk. No. 2:13-bk-20738-ER |
| Debtors. | Adv. No. 2:19-ap-01079-ER |
| ESMERALDA MIRANDA; SERGIO LOPEZ MIRANDA, | |
| Appellants, | |
| v. | **MEMORANDUM**[*] |
| BANK OF AMERICA NATIONAL ASSOCIATION; SHELLPOINT MORTGAGE SERVICING, LLC, | |
| Appellees. | |

Submitted Without Argument on March 26, 2020

Filed – May 7, 2020

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Ernest M. Robles, Bankruptcy Judge, Presiding

_____

Appearances:    David A. Akintimoye on brief for Appellants; Jan T. Chilton and Bernard J. Kornberg of Severson & Werson on brief for Appellee Bank of America National Association; Erin M. McCarthy and Mark S. Kraus of ZBS Law, LLP, on brief for Appellee Shellpoint Mortgage Servicing, LLC.

_____

Before: LAFFERTY, GAN, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Sergio and Esmeralda Miranda ("Debtors") appeal the bankruptcy court's orders granting summary judgment to Appellees Bank of America National Association ("BANA") and Shellpoint Mortgage Servicing, LLC ("Shellpoint"), dismissing Debtors' claims arising from Appellees' alleged breaches of Debtors' confirmed chapter 11[1] plan. When Debtors filed their chapter 11 petition, BANA held notes secured by deeds of trust on two of Debtors' rental properties. Preconfirmation, BANA assigned the deeds of

_____

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

trust to Green Tree Servicing, LLC ("Green Tree"), and Nationstar Mortgage, LLC ("Nationstar"), respectively, and notified Debtors that those entities would be servicing the loans in the future. Although Debtors thereafter made payments to the designated servicers and entered into a loan modification with Nationstar and a stipulation with Green Tree, Debtors identified the creditors in their proposed plan as BANA and "BAC Homes Loans Serv LP aka Bank of America N.A.," respectively. They served notice of the confirmation hearing on BANA and Green Tree. The parties dispute whether Nationstar was served with notice of the confirmation hearing: no proof of service was filed reflecting such service, but Debtors contend it was served. No party objected to plan confirmation, and the bankruptcy court confirmed the plan.

Debtors allege that, about a year after confirmation, they began receiving mortgage statements from the designated servicers that did not reflect the terms of the confirmed plan, and they were unsuccessful in obtaining any explanation from those entities. They sued BANA, Ditech Financial, LLC ("Ditech")–Green Tree's successor-in-interest–and Nationstar in state court for breach of contract. After the state court dismissed those claims, Debtors moved to reopen their bankruptcy case to file an adversary proceeding against BANA and Shellpoint Mortgage Servicing, LLC ("Shellpoint"), Nationstar's successor-in-interest, for breach of contract and declaratory and injunctive relief.

BANA and Shellpoint each moved to dismiss the claims against them. The bankruptcy court converted the motions to motions for summary judgment and granted both, finding that (1) BANA was not a creditor at the time of plan confirmation and thus was not bound by the terms of the confirmed plan, and (2) Nationstar was not listed in the plan and thus its successor-in-interest, Shellpoint, was not bound by the terms of the confirmed plan.

We AFFIRM the bankruptcy court's order granting summary judgment to BANA. We REVERSE and REMAND the bankruptcy court's order granting summary judgment to Shellpoint.

## FACTUAL BACKGROUND[2]

Debtors filed a chapter 11 petition in April 2013. At that time, they owned rental properties located at 1118 and 1123-1123½ West 119th Street in Los Angeles, California ("1118 Property" and "1123 Property" respectively). As of the petition date, both properties were encumbered by deeds of trust in favor of BANA, and Debtors were behind on the corresponding note payments. We provide a short history of relevant events with respect to those loans:

---

[2]The parties did not supply a complete record. We have therefore exercised our discretion to examine the bankruptcy court's docket and imaged papers in Bk. No. 2:13-bk-20738 and Adv. No. 2:19-ap-01079-ER. *Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 (9th Cir. BAP 2008).

4

**Loan Secured by the 1118 Property**

In May 2013 BANA notified Debtors that Green Tree would begin servicing the loan as of June 1, 2013.

On May 29, 2013, BANA filed a proof of claim (No. 2-1) for $625,164.05, secured by the 1118 Property. On June 20, 2013, Green Tree filed a Notice of Transfer of Claim No. 2-1 indicating that it had acquired the claim from BANA and requesting that future notices and payments be sent to Green Tree at designated addresses. On August 2, 2013, an assignment of deed of trust from BANA to Green Tree was recorded.

Shortly thereafter, Debtors sought an order valuing the 1118 Property at $320,000. The bankruptcy court granted the motion over Green Tree's objection.

On December 6, 2013, Debtors filed a proposed chapter 11 plan of reorganization and disclosure statement, serving the notice of hearing for approval of the disclosure statement on all creditors on the mailing matrix, including BANA and Green Tree. Despite the fact that the claim secured by the 1118 Property was held by Green Tree, Debtors identified BANA as the claimant. In January 2014, Debtors and Green Tree filed a stipulation for the treatment of Green Tree's secured claim under the plan that was consistent with the proposed plan. Green Tree voted to accept the plan (the only impaired creditor to do so), and the bankruptcy court entered an order confirming it on August 7, 2014.

**Loan Secured by the 1123 Property**

In April 2013, BANA notified Debtors that it was transferring servicing of the loan on the 1123 Property to Nationstar. On July 11, 2013, MERS, acting on behalf of BANA, recorded an assignment of the deed of trust to Nationstar. No proof of service appears on the bankruptcy court docket showing that Debtors served Nationstar with notice of the bankruptcy case.

In August 2013, Debtors filed a motion to value the 1123 Property at $250,000 and served it on BANA but not Nationstar. No opposition was filed, and the court entered an order in October 2013 granting the motion.

In late November 2013, Debtors entered into a loan modification agreement with Nationstar, which identified Nationstar as the lender. Nevertheless, Debtors' proposed chapter 11 plan, which was filed less than two weeks later, identified the claimant for the claim secured by the 1123 Property as "BAC Homes Loans Serv LP aka Bank of America N.A." and proposed treatment differing from that specified in the loan modification.

The bankruptcy court docket contains no proofs of service reflecting that Nationstar was served with notices of hearing on the disclosure statement or the plan or any other relevant documents. But in July 2019, in the adversary proceeding that is the subject of this appeal, Debtors submitted the declaration of Elizabeth Akintimoye, a "volunteer" in Debtors' counsel's law office. She testified in her declaration that in May

6

2013 she spoke with an agent of Nationstar and obtained the address where notices should be sent. She stated that she remembered mailing several documents to Nationstar on an unspecified date, including the order setting bar date and the notice of hearing on confirmation. She further stated that on May 22, 2014, copies of the approved disclosure statement, scheduling order, and a ballot for voting on the plan were mailed to Nationstar. Debtors also submitted a declaration stating that, in May 2013, they informed Nationstar they were in bankruptcy and provided their attorney's contact information to a "representative" of Nationstar. Nationstar did not file a proof of claim, nor did it submit a vote on the plan.[3]

As noted, the bankruptcy court entered an order confirming the plan in August 2014. The court entered a final decree in February 2015, and the case was closed.

In 2017, Debtors filed a lawsuit in state court against BANA, Ditech (Green Tree's successor), and Nationstar for breach of contract, based on the defendants' alleged failures to comply with the terms of the confirmed chapter 11 plan. The state court dismissed the claims as to all three defendants, apparently concluding that it lacked jurisdiction over the matter based on the confirmed plan's provision that the bankruptcy court

---

[3]The bankruptcy court docket does not reflect any documents filed on behalf of Nationstar.

would retain jurisdiction until all payments were made.

In late 2018, Nationstar assigned the deed of trust on the 1123 Property to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, as Owner Trustee on Behalf of CSMC 2018-RPL6 Trust, and servicing of the loan was transferred to Shellpoint.

In March 2019, Debtors obtained an order reopening their chapter 11 case. They then filed an adversary proceeding against BANA and Shellpoint, seeking against both defendants: (1) damages for breach of contract; and (2) a declaratory judgment that the defendants were bound by the terms of the confirmed chapter 11 plan and an order to comply with those terms. In their complaint, Debtors acknowledged that, post-petition and pre-confirmation, BANA had "hired" Ditech and "appointed" Nationstar to service the two loans. Debtors alleged that they made payments to both servicers in accordance with the confirmed plan, and that in 2018, after Shellpoint took over the servicing of the loan on the 1123 Property, they made payments to Shellpoint. They further alleged that they kept receiving mortgage statements from the servicers that did not reflect the terms of the confirmed plan, including amounts due that differed from the terms of the plan, different interest rates, and a longer loan term.

BANA and Shellpoint each filed motions to dismiss under Civil Rule 12(b)(6), applicable in bankruptcy via Rule 7012. Because evidence was submitted with both motions and thus required the court to look beyond

the allegations of the complaint, the bankruptcy court issued orders notifying the parties that the motions to dismiss would be treated as motions for summary judgment; the orders also set deadlines for the parties to submit additional briefing and evidence. With respect to Shellpoint's motion, the court requested that the parties focus their additional briefing on whether Nationstar was bound by the plan, i.e., whether there was any evidence establishing that Nationstar was identified in the plan or received appropriate notice.

BANA argued that the claims against it should be dismissed because it was neither the servicer nor the lender on either loan at the time of plan confirmation, having assigned all of its rights under the respective deeds of trust. BANA thus asserted that all of Debtors' claims against it must be dismissed with prejudice.

Shellpoint argued that Debtor's claims were barred by claim preclusion based on the state court's dismissal of their complaint, which alleged the same causes of action against BANA, Nationstar, and Ditech.[4] Shellpoint also argued that neither it nor Nationstar were parties to the confirmed plan and thus could not be held liable for breach of its terms.

Debtors opposed the motions. In their supplemental briefing, Debtors argued that Nationstar had constructive and actual notice of the

---

[4]In its ruling on summary judgment, the bankruptcy court rejected this argument. Shellpoint did not cross-appeal that aspect of the court's ruling.

bankruptcy filing before confirmation and that Shellpoint was thus equitably estopped from asserting that it was not bound by the confirmed plan. Debtors filed a declaration stating that they had recorded their bankruptcy petition in May 2013 and that they had been notified that Nationstar was the servicer of the loan on the 1123 Property but were unaware that the deed of trust had been assigned. They also stated that when they entered into the loan modification with Nationstar, they did not notice that Nationstar was designated on the agreement as the lender.

In its supplemental briefing, Shellpoint argued that Debtors had failed to identify Nationstar as a creditor nor had they properly served Nationstar with notice of the bankruptcy case. It asserted that Ms. Akintimoye's declaration was insufficient to establish that Nationstar had adequate notice. It did not file any contrary evidence.

The bankruptcy court issued tentative rulings granting both motions; Debtors did not appear at the scheduled hearings to contest the rulings. Thereafter, the bankruptcy court entered orders granting BANA's and Shellpoint's motions for summary judgment, dismissing all claims. With respect to BANA, the bankruptcy court found, in relevant part, that BANA was not bound by the confirmed plan under principles of claim preclusion because BANA was not the holder of the notes and deeds of trust for the properties as of the date of plan confirmation, nor was it the servicer of the loans.

As for Shellpoint, the bankruptcy court found that Debtors had not established all of the elements required to show equitable estoppel. Specifically, Debtors could not show that they were ignorant of the fact that Nationstar was the lender on the debt secured by the 1123 Property because they had reasonable inquiry notice based on the loan modification agreement. The court concluded that Shellpoint was entitled to judgment as a matter of law because Nationstar was not listed as a creditor in the plan and thus was not a party bound by it.

Debtors timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(a).[5] We have jurisdiction under 28 U.S.C. § 158.

---

[5]The parties and the bankruptcy court did not raise the question of the bankruptcy court's post-confirmation jurisdiction, apparently relying on the provision of the confirmed plan that the bankruptcy court retains jurisdiction until all plan payments have been made. But a plan's retention of jurisdiction provision does not end the inquiry. *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F3d 1124, 1136 n.8 (9th Cir. 2010). Rather, the Ninth Circuit instructs that the bankruptcy court must apply the "close nexus" test for post-confirmation jurisdiction, which "encompasses matters affecting the interpretation, implementation, consummation, execution, or administration of the confirmed plan."*Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard)*, 729 F.3d 1279, 1287 (9th Cir. 2013) (citations and internal quotations omitted). The close nexus test is met if a claim would likely require interpretation of the confirmed plan or if it could affect the implementation and execution of the plan. *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005) (holding that bankruptcy court had post-confirmation jurisdiction over breach of contract claims based on alleged violations of plan provisions). Under a broad reading of this standard,

(continued...)

**ISSUES**

Whether the bankruptcy court erred in granting summary judgment to BANA on Debtors' claims against it.

Whether the bankruptcy court erred in granting summary judgment to Shellpoint on Debtors' claims against it.

**STANDARD OF REVIEW**

We review de novo the bankruptcy court's grant of summary judgment. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). "When we conduct a de novo review, we look at the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered, giving no deference to the bankruptcy court's determinations." *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 572–73 (9th Cir. BAP 2011) (citations and quotations omitted).

We must apply the same legal standards that all federal courts are required to apply in considering the propriety of summary judgment. *Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 35 (9th Cir. BAP 2011), *aff'd*, 708 F.3d 1123 (9th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Wank v. Gordon (In re*

---

[5](...continued)
the claims at issue seem to satisfy the close nexus test, although it is not clear whether consideration of the merits would "likely" require interpretation of the plan.

12

*Wank)*, 505 B.R. 878, 886 (9th Cir. BAP 2014) (citing Civil Rule 56(a), applicable in adversary proceedings by Rule 7056). An issue is genuine if there is enough evidence for a reasonable trier of fact to make a finding in favor of the non-moving party, and an issue is material if it might legally affect the outcome of the case. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

## DISCUSSION

### A.    The bankruptcy court did not err in granting BANA's motion for summary judgment.

The bankruptcy court found, based on the undisputed evidence before it, that BANA was neither a creditor of the Debtors nor a servicer of the subject loans as of the confirmation date. As such, the court concluded that BANA was not bound by the plan because it had no legal or equitable interest in the property dealt with by the plan.

Debtors argue that the bankruptcy court erred in this determination because BANA was a creditor on the petition date and was served with notice of the hearing on plan confirmation and did not object. Debtors cite *Ground Systems, Inc. v. Albert (In re Ground Systems, Inc.)*, 213 B.R. 1016, 1020 (9th Cir. BAP 1997), and *Nugent v. American Broadcasting Systems, Inc.*, 1 F. App'x 633, 634 (9th Cir. 2001), for the rule that a creditor cannot object to a plan post-confirmation. It is correct that a creditor that objects to its plan

treatment must formally object or otherwise be bound by the plan terms, *see Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995), but that rule presupposes that the party in question is actually a creditor. As the bankruptcy court found, BANA was not a creditor at the time the plan was confirmed. In fact, the record shows that BANA was no longer a creditor of the Debtors by no later than August 2, 2013. Debtors filed their proposed plan and disclosure statement approximately four months later. They cite no authority for the notion that BANA had a duty to object to a plan that had absolutely no impact on its rights. Accordingly, Debtors have not shown that the bankruptcy court erred in granting summary judgment dismissing all claims against BANA.

## B. The bankruptcy court erred in granting summary judgment to Shellpoint.

In granting Shellpoint's motion for summary judgment, the bankruptcy court found that Shellpoint was not bound by the plan because Nationstar was not listed as a creditor in Debtors' plan and therefore could not be considered a party to the confirmed plan or capable of breaching it. The court also rejected Debtors' assertion that Shellpoint was equitably estopped from arguing that it was not bound by the plan.

### 1. The evidence appears to have raised a genuine issue of material fact regarding whether Nationstar had adequate notice of the plan and its right to object.

As noted, the bankruptcy court specifically requested briefing on the

issue of whether there was evidence establishing that Nationstar ever received appropriate notice of Debtors' plan. But in its decision, the bankruptcy court did not fully address that issue, finding that Debtors' failure to list Nationstar in the plan negated any argument that it was a party to the confirmed plan or capable of breaching it. But this is not the end of the analysis.

Section 1141(a) provides that the provisions of a confirmed plan bind the debtor and "any creditor." There is no dispute that Nationstar was a creditor at the time of confirmation. Accordingly, if it had notice adequate to satisfy due process, it (and Shellpoint) would be bound by the plan. *M & I Thunderbird Bank v. Birmingham (In re Consol. Water Utils., Inc.)*, 217 B.R. 588, 590 (9th Cir. BAP 1998) ("As long as due process is complied with, a confirmed plan binds all entities that hold a claim or interest, even if they are not scheduled, have not filed a claim, have not received a distribution under the plan or are not permitted to retain an interest under such plan." (citation omitted)). This is true even if the provisions of the confirmed plan violate the Bankruptcy Code and Rules. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

On the other hand, if Nationstar did not receive notice sufficient to satisfy due process, it would not be bound by the plan terms. *Humphries v. EMC Mortg. Corp. (In re Mack)*, Nos. CC–06–1123 & 1242–MoDK, 2007 WL 7545163 at *5 (9th Cir. BAP Mar. 28, 2007). *See also Levin v. Maya Constr. Co.*

15

*(In re Maya Constr. Co.)*, 78 F.3d 1395, 1398 (9th Cir. 1996) (creditor whose claim was known to debtor but who was not served with notice of the time fixed for filing objections to the plan, confirmation hearing, and other relevant notices was not bound by the confirmed plan.). Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Espinosa*, 559 U.S. at 272 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

It is undisputed that Debtors never listed Nationstar as a creditor in their bankruptcy case or plan or added it to the mailing matrix, and there are no proofs of service on the bankruptcy court docket showing that Nationstar was served with any notices during the bankruptcy case. But Ms. Akintimoye testified in her declaration that she sent the notice of claims bar date and notice of hearing on plan confirmation to Nationstar on an unspecified date, and on May 22, 2014, copies of the approved disclosure statement, scheduling order, and a ballot for voting on the plan "were mailed" to Nationstar. Assuming those documents were sent to the correct address, they would have been timely under the court's scheduling order. Additionally, Debtors testified in their declaration that they had informed Nationstar in May 2013 that they were in bankruptcy, although

they did not give a precise date or state how notice was given or to whom.[6]

In a footnote to its findings and conclusions, the bankruptcy court acknowledged Ms. Akintimoye's declaration as it pertained to the equitable estoppel analysis and concluded it was irrelevant Even though the court had specifically asked the parties to address whether Nationstar had appropriate notice of the plan, the court did not consider whether the Debtors' evidence was sufficient to raise a genuine issue of material fact precluding summary judgment on the merits.[7] Admittedly, Ms. Akintimoye's declaration is missing some critical information. The declaration was filed in July 2019, while the events testified to occurred in 2013 and 2014. Ms. Akintimoye did not explain how she had a clear recollection of those events. Further, it is not clear how she had personal knowledge that certain documents were mailed on May 22, 2014, as her declaration states only that those documents were mailed, not that she personally mailed them. Nor did she explain why no proofs of service evidencing the purported mailings to Nationstar were filed in the bankruptcy court. Additionally, Ms. Akintimoye did not provide the contact name or address to which she sent documents. Finally, the

---

[6]The assignment of deed of trust to Nationstar was executed on May 14, 2013 and recorded July 11, 2013, so it is not clear whether Nationstar was a creditor, as opposed to a servicer, when Debtors allegedly informed them of their bankruptcy case.

[7]Surprisingly, Debtors did not raise this issue in their appellate brief.

declaration is inconsistent with Debtors' assertion that they did not know Nationstar was a creditor, i.e., an entity entitled to notice of confirmation and an opportunity to object and to vote on the plan.

Certainly, Ms. Akintimoye's declaration is self-serving and uncorroborated. But this does not necessarily mean that it is insufficient to create a genuine issue of material fact precluding summary judgment. Declarations filed in summary judgment proceedings are usually self-serving because the parties submitting them are attempting to support their positions; accordingly, this by itself is not a sufficient ground to disregard that evidence. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). It may be appropriate to disregard a declaration that states only conclusions, and not facts that would be admissible evidence, or one that lacks detailed facts and supporting evidence, or one that contradicts prior testimony. *Id.* at 497-98; *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991). Here, although Ms. Akintimoye's declaration testimony is less than precise, it consists solely of facts that she asserts are based on her personal knowledge and does not contradict any other evidence in the record. Notably, Shellpoint did not provide any evidence to the contrary.

On summary judgment, the trial court is to believe the evidence of the non-moving party, and all justifiable inferences must be drawn in favor of that party. *Anderson*, 477 U.S. at 255. At the same time, if the non-moving party bears the ultimate burden of proof on an element at trial, that party

18

must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Using these standards, we cannot say that Ms. Akintimoye's declaration was insufficient to establish a genuine dispute of material fact on whether Nationstar had notice of its right to object to Debtors' plan. *See Nigro*, 784 F.3d at 498 (testimony based on personal knowledge that was legally relevant and internally consistent was sufficient to establish a genuine dispute of material fact). Accordingly, we must remand for the bankruptcy court to consider this evidence in light of the standards recited above.

### 2. The bankruptcy court did not err in rejecting Debtors' equitable estoppel argument.

The bankruptcy court rejected Debtors' argument that Shellpoint was equitably estopped from arguing that Nationstar was not bound by the plan. The court applied California equitable estoppel law and found that Debtors could not establish that they were ignorant of the truth because they had inquiry notice that Nationstar was a creditor.[8]

The bankruptcy court applied the California standard for equitable

---

[8]In California, the party asserting equitable estoppel must prove five elements: "(a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it." *Simmons v. Ghaderi*, 44 Cal. 4th 570, 584 (2008) (citing 13 Witkin, Summary of Cal. Law, Equity, § 191 at 527-528 (2005)).

estoppel because that was the law cited to it by the Debtors, and Shellpoint did not dispute that it was the correct law to apply. But while the adversary proceeding involved state law breach of contract claims, the issue being decided in the equitable estoppel context was whether Nationstar (and thus Shellpoint) was bound by the plan under § 1141. Accordingly, federal equitable estoppel principles apply, which differ somewhat from California's.

In the Ninth Circuit, "[t]he doctrine of equitable estoppel, often referred to as fraudulent concealment, is based on the principle that a party 'should not be allowed to benefit from its own wrongdoing.'" *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011) (quoting *Collins v. Gee W. Seattle LLC*, 631 F.3d 1001, 1004 (9th Cir. 2011)). The party asserting equitable estoppel carries the burden of pleading and proving the following elements: (1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance. *Id.* (citing *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991)). Although these elements are not facially distinguishable from those required under California law, courts applying the federal standard to the question of the asserting party's ignorance have focused on whether that ignorance resulted from the other party's fraudulent concealment or misrepresentation. *Id*. Put another way, even if the party asserting

20

equitable estoppel knows the true facts, the doctrine may still apply if that party reasonably relied on the other party's statement or conduct in failing to act. *Id.* (citing *Stitt v. Williams*, 919 F.2d 516, 522 (9th Cir. 1990)).

This error, however, was harmless. Under the federal standard, Debtors would have needed to submit, at a minimum, evidence that could reasonably be construed to support a finding that Nationstar had concealed or misrepresented facts in an attempt to fraudulently mislead them. *See Aronsen v. Crown Zellerbach*, 662 F.2d 584, 595 (9th Cir. 1981) (reversing and remanding grant of summary judgment to defendant, in part due to factual disputes relevant to equitable estoppel, noting, "[o]n review of a grant of summary judgment, it must appear that the facts as alleged could not reasonably be construed as permitting equitable estoppel or tolling.") (citations omitted)). The record contains no evidence that would support such a finding.

## CONCLUSION

For the reasons explained above, Debtors have not shown that the bankruptcy court erred in granting summary judgment to BANA. We thus AFFIRM that order. But because there was potentially an issue of fact precluding summary judgment with respect to Shellpoint's motion, the bankruptcy court erred in granting it. We thus REVERSE and REMAND for further proceedings in accordance with this disposition.